**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| PARTS GEEK, LLC | : | CIVIL ACTION NO. |
| 3203 Atlantic Avenue | : | |
| Allenwood, NJ 08720 | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| U.S. AUTO PARTS NETWORK, INC. | : | **COMPLAINT AND** |
| (a Delaware corporation) | : | **DEMAND FOR JURY TRIAL** |
| 17150 South Margay Avenue | : | |
| Carson, CA 90746 | : | |
| and | : | |
| GOOGLE, INC. | : | |
| (a Delaware corporation) | : | |
| 1600 Amphitheatre Parkway | : | |
| Mountain View, CA 94043 | : | |
| | : | |
| Defendants | : | |

Plaintiff Parts Geek, LLC ("Parts Geek"), through its counsel, for its Complaint against

U. S. Auto Parts Network, Inc. ("USAP") and Google, Inc. ("Google"), alleges as follows:

**NATURE OF THE ACTION**

1.      This lawsuit relates to the wrongful use of trademark on the Internet, particularly

Defendant USAP's and Defendant Google's unauthorized use of the famous trademark and

service mark that identify Parts Geek, a well known seller of auto parts in the United States, to

Internet users (the "Parts Geek Mark").   In order to assist consumers in making informed

purchasing decisions, trademark law protects consumers from confusion and encourages

companies to develop brand names to differentiate their products and services within the

marketplace.

2.      Because of the ease and low cost of setting up a website and the speed with which Internet transactions occur, others improperly use registered brands to take advantage of the other's goodwill.  This lawsuit involves USAP and Google in such an unauthorized and intentional use of the Parts Geek's Mark through Google's technology.

3.      Google owns and operates one of the world's most-utilized Internet search engines.  A search engine is a computer program that allows computer users to search the World Wide Web for websites containing particular content.  Google's search engine is available not only on its own website (www.google.com), but also through other popular websites that use its search engine, among others, AOL, Netscape and Earthlink.

4.      To use Google's search engine, a World Wide Web user ("web user") need only type in a few words and hit the enter key (or click on the "Google Search" button) to receive a list of hyperlinks ("links") to web pages that Google identifies as relevant to the search requested, the display and placement of which are not influenced by payments to Google from the website owners, i.e. "organic search results".

5.      Google, however, does not just provide Internet users with such "organic search results." It also provides paid advertising results "Sponsored Links" or "Paid Traffic".  Here, without authorization or approval from Parts Geek, Google has sold to USAP and other third parties the right to use the Parts Geek Mark or words, phrases, or terms confusingly similar to the mark, as keyword triggers that cause paid advertisements, which Google calls "Sponsored Links," to be displayed above or alongside the "organic search results." In many cases, the text and titles of these "Sponsored Links" include the Parts Geek Mark or terms confusingly similar to the mark.  Thus, when consumers enter the Parts Geek Mark into Google's search engine to search or navigate the World Wide Web, instead of being directed to Parts Geek's website,

Google's "Sponsored Links" may instead misdirect them to: (i) websites of companies that compete with Parts Geek; (ii) websites that sell auto parts not only for Parts Geek, but also for a variety of competitors of Parts Geek.

6.    Defendant, USAP is a public company who improperly and deceptively dominates the "natural" or "organic" and "paid traffic" of Google's search engine by bidding on certain words from many multiple pay per click accounts that USAP has with Google in violation of Google's policies, and from disguised multiple websites that exceed several hundred in number with apparent different ownership, telephone numbers, addresses and styles of internet pages and sites, but actually owned by USAP or its affiliates and with duplicative information. All of which is designed to tilt the playing field in favor of USAP.

7.    USAP has used different employees and advertising agents to give the appearance that the site is unique when, in reality, they are not; having the same pricing and catalog part numbers.

8.    Google's search engine is helping USAP and other third parties to mislead consumers and misappropriate the Parts Geek Mark by using them as keyword triggers for paid advertisements and by using them within the text or title of paid and organic advertisements.

## THE PARTIES

9.    Plaintiff, Parts Geek, LLC, is a limited liability company organized under the laws of the State of New Jersey with its principal place of business at 3203 Atlantic Avenue, Allenwood, New Jersey 08720.

10.    Defendant, U.S. Auto Parts Network, Inc. ("USAP"), is a Delaware corporation engaged in a business similar to and directly competing with Parts Geek, with its principal place of business located at 17150 South Margay Avenue, Carson, California 90746.  In addition, on

information and belief, USAP advertises, solicits clients and conducts substantial amounts of business in the State of New Jersey.

11.    Upon information and belief, Defendant Google is a corporation organized under the laws of the State of Delaware with a principal place of business in Mountain View, California.    In addition, on information and belief, Google advertises, solicits clients and conducts substantial amounts of business in the State of New Jersey.

## JURISDICTION AND VENUE

12.    This action arises in part under the Lanham Act, 15 U.S.C. §§ 1051, et seq.  This Court has federal question jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), and 1338(b).  This Court has supplemental jurisdiction over the New Jersey state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so closely related to the federal claims brought herein as to form part of the same case or controversy.  In addition thereto, jurisdiction over the New Jersey state law claims is proper under and pursuant to 28 U.S.C. § 1332 (a) (1) as there is complete diversity of citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

13.    Upon information and belief, Defendants are and have been conducting continuous and systematic business and have committed tortious acts in the State of New Jersey and within this vicinage, at least some of the events giving rise to the claims alleged herein occurred in the State of New Jersey and within this vicinage, and Defendants' actions are intentional and knowingly directed at Parts Geek, which Defendants know is located in New Jersey.

14.    USAP and Google are subject to personal jurisdiction in the State of New Jersey because their unlawful conduct occurred, in part, within New Jersey; because the unlawful

conduct complained of herein caused injury, in part, within New Jersey; because USAP and Google regularly conduct or solicit business within New Jersey, engage in other persistent courses of conduct and/or derive substantial revenue from goods and/or services used or consumed within New Jersey; and because USAP and Google regularly and systematically direct electronic activity into the State of New Jersey with the intent of engaging in business within New Jersey, including the creation, hosting, and offering of fully interactive websites, advertising, e-mail, and other internet-related services to web users within New Jersey, as well as entry into contracts with residents of New Jersey.

15.    Venue is proper in New Jersey under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and actions of defendants giving rise to the claims herein occurred in New Jersey.

16.    Venue is also proper in New Jersey under 28 U.S.C. §§ 1391(b)(1) and (c) because USAP and Google are corporations whose contacts, as alleged in this Complaint, would be sufficient to subject it to personal jurisdiction if New Jersey were a separate state.

17.    Venue is also proper under and pursuant to 28 U.S.C. § 1391 (a) (2), (3).

### FACTUAL BACKGROUND COMMON TO ALL COUNTS

### The Internet and the World Wide Web

18.    The Internet is a global network of millions of interconnected computers. The World Wide Web is a portion of the Internet especially well-suited to displaying images and sound as well as text. Much of the information on the World Wide Web is stored in the form of web pages, which can be accessed through a computer connected to the Internet (available through commercial Internet service providers or "ISPs"), and viewed using a computer program called a "browser," such as Microsoft Internet Explorer. "Websites" are locations on the World

Wide Web containing a collection of web pages. A web page is identified by its own unique Uniform Resource Locator ("URL") or "web address" (e.g., http://www.partsgeek.com), which ordinarily incorporates the website's "domain name" (e.g., "partsgeek.com"). Because URLs and domain names are not case-sensitive, URLs and domain names that contain capital letters are functionally the same as those that do not.

### Parts Geek and the Parts Geek Mark

19.     The predecessor to Parts Geek, using the Parts Geek Mark, was founded in 1999. Since that time, the Parts Geek brand has become a leader in providing online sales of auto parts. Parts Geek's auto parts fit hundreds of vehicles and have tens of thousands of applications. Parts Geek's website provides consumers with easy access to its automobile parts for sale through its proprietary and easy to use catalogs.

20.     Parts Geek, by and through its predecessor-in-interest, Import Specialists of America, Inc., began adopting and using the following trade name, service mark, logo and title Parts Geek ("the Mark"), at least as early as April of 1999, in connection with its high quality sales and services throughout the United States and worldwide.

21.     To preserve and enhance its trademark rights, Parts Geek has obtained federal trademark registration for Parts Geek Mark.

22.     Parts Geek's logo is depicted below:



23.     Parts Geek's federally registered mark is: "Parts Geek," registered on June 12, 2007.

24.     Parts Geek also has common law rights to the Parts Geek Mark in the State of New Jersey by virtue of the mark's eligibility for protection and Parts Geek's status as the senior user of the mark.

25.     The Parts Geek Mark is a unique and famous distinctive designation of the source of Parts Geek's products and services.

26.     Parts Geek has invested substantial amounts in advertising and marketing in order to build the fame, reputation, and goodwill of the Parts Geek Mark.   Parts Geek advertises through a variety of media.

27.     Parts Geek also promotes its products and services on the Internet, via its own website and through advertising on the websites of third parties.

28.     Parts Geek's products have been widely advertised, extensively offered and sold under the Mark throughout the United States and worldwide and the Mark has become, through widespread use and favorable public acceptance and recognition, a famous Mark and asset of substantial value as a symbol of Parts Geek, its quality products, services and its goodwill.

29.     In recognition of the inherent distinctiveness and exclusive rights of use, on June 12, 2007, the United States Patent and Trademark Office granted Import Specialists of America, Inc., Registration No. 3,250,569 in connection with "retail store services in the automotive parts and supplies field."   The registration was then transferred to Web Geek, LLC and licensed to Parts Geek, LLC.   A copy of the Certificate of Registration is attached hereto as Exhibit "A" and made a part hereof.

30.     Registration No. 3,250,569 and common law rights to use the Mark were assigned to Web Geek, LLC and licensed to Parts Geek by Import Specialists of America, Inc. on July 14,

2008. A copy of the Trademark Assignment is attached hereto as Exhibit "B" and made a part hereof.

31.    Trademark Registration No. 3,250,569 remains in full force and effect and the certificate of registration thereof constitutes "conclusive evidence" of "the validity of the registered mark, of the registrant's ownership of the mark and of the registrant's exclusive right to use the mark in connection with the goods or services specified in the registration" 15 U.S.C. §1115.

32.    As a result of Parts Geek's, and its predecessor-in-interest, Import Specialists of America, Inc.'s, investment of effort, money, skill and other resources, the Mark are widely recognized as indicating Parts Geek's services, and have become well-recognized and famous in the United States and worldwide.

33.    Parts Geek owns the domain name "partsgeek.com," which is used in connection with operating website located at www.partsgeek.com, and which displays the Mark throughout the United States and worldwide.

34.    Through Parts Geek's actions, and because of widespread and favorable public acceptance and recognition, the Parts Geek Mark has become distinctive designations of the source of origin of Parts Geek's products and services.  The Parts Geek Mark has become uniquely associated with, and hence identifies, Parts Geek.  The mark is an asset of substantial value as a symbol of Parts Geek, its quality products and services, and its goodwill.

35.    Accordingly, the Parts Geek Mark has developed secondary meaning.

36.    The Parts Geek Mark has become "famous" within the meaning of the dilution provisions of the Lanham Act, 15 U.S.C. §1125(c).  For example, as a result of Parts Geek's

advertising and promotional efforts, the mark "Parts Geek" has, on information and belief, attained some of the highest levels of brand recognition among auto parts consumers.

37.    Parts Geek conducts a substantial amount of business over the Internet and has made a sizeable investment in the development of its online business.  It is generally more beneficial to Parts Geek when consumers purchase directly through Parts Geek.  Among other reasons, this is because when consumers buy through www.partsgeek.com, it assists Parts Geek in conveying important information to its customers, in developing a direct relationship and future business with its customers and in minimizing costs associated with various transactions while minimizing the cost of acquiring a customer.

**USAP's Use of Parts Geek Mark**

38.    Without authorization from Parts Geek, Defendant USAP has improperly positioned its www.autopartswarehouse.com website and its www.partstrain.com website, as well as other sites, as a "Sponsored Link", or the like, in various search engines, such as Google, by purchasing the search term "Parts Geek" which is the Parts Geek Mark for its own advertising, to direct and generate interest, traffic and sales from Parts Geek  to Defendant USAP's www.autopartswarehouse.com and www.partstrain.com websites and others which directly  compete with Parts Geek's business.  A copy of print-outs as an example of results of Google searches illustrating Defendant USAP's advertisements is attached hereto as Exhibit "C" and made a part hereof.

39.    The exact Parts Geek Mark appears in the text of Defendant USAP's ads stating that they are, in fact, Parts Geek.

40.    The practice of purchasing search terms which incorporate the Parts Geek Mark for the improper purpose of manipulating a search engine's results list causes confusion or

mistake on the part of consumers and the public at large as to the source of Defendant's services and Parts Geek's services, or sponsorship or approval by Parts Geek of Defendant's services, or affiliation between Parts Geek and Defendant USAP.

41.    Such confusion leads to substantial damage to Parts Geek in terms not only of loss of sales, but also injury to its reputation in the event and strong likelihood that Defendant USAP's services are not commensurate with those of Parts Geek.

42.    Upon information and belief, without authorization from Parts Geek, Defendant USAP has also been using one or more of the Parts Geek Mark to generate interest and traffic in its www.partstrain.com website by means of a blog called "Auto Parts Geek," owned and operated by Defendant USAP through an employee disguised as an informational site, but built to divert sales and to redirect Parts Geek traffic to www.partstrain.com, which directly competes with Parts Geek's business.  A copy of print-outs from Defendant's blog illustrating Defendant's use of the Mark is attached hereto as Exhibit "D" and made a part hereof.

43.    By this conduct, including its advertising activities and unauthorized uses of the Mark, Defendant USAP misappropriated Parts Geek's advertising ideas and style of doing business and infringed Parts Geek's trade names, service mark, logos, titles and slogans.

44.    The injuries and damages that Parts Geek sustained were directly and proximately caused by Defendant USAP's wrongful misappropriation of Parts Geek's Mark, advertising ideas and style of doing business and infringement of Parts Geek's trade names, service mark, logos, titles and slogans.

45.    USAP's unauthorized use in commerce of the Parts Geek Mark generates profits for USAP and its affiliates that are directly attributable to their unauthorized exploitation of the value and name recognition associated with the Parts Geek Mark.

**USAP's Improper and Deceptive Acts**

46.    On information and belief, Defendant USAP owns well in excess of 100 website domain names which are registered to Discreet Domains, Maderia Portugal, in order to disguise or hide its ownership of such sites.

47.    The content of these sites are duplicative of each other with the same pricing and, in many cases, the same parts numbers and designed to rank well on Google algorithms so that the "natural and organic traffic" will appear to be of different websites by different owners when, in fact, a substantial number of such websites are owned by Defendant USAP or its affiliates, thereby tilting the playing field in USAP's favor.  Therefore, USAP dominates organic search results.

48.    Defendant USAP further violates the Google rules and deceives the public by bidding on the same keywords or ad words from many multiple pay per click accounts that USAP has with Google through related website identities, thereby dominating the paid search results with several entries of Defendant USAP's websites while deceptively appearing to be those of others.  Thus, for example, out of five (5) paid advertised links, three (3) or four (4) may be to entities owned by USAP or its affiliates with the same parts, prices and content in each. The advertised links, therefore, will be mostly owned by USAP.

**Google's Search Engine**

49.    Web users who are searching for a specific company product, service or information, but who do not know the exact domain name or website address at which it may be found, may use an internet "search engine" to locate it.

50.    The order in which "organic search results" are listed is automatically determined by a number of factors, including Google's patented PageRank algorithm.

51.    By using Google's Internet search engine, web users are identifying to Google the subjects in which they are interested, the companies that they seek, or the products or services they wish to buy.  This allows Google to obtain a significant percentage of its profits from "contextual" or "search" advertising.

52.    On information and belief, the relevance of these "Sponsored Links" is determined not by an objective measure, but rather is substantially influenced by the amount of money Google stands to obtain from the "sponsors" of these links.

53.    Google's use of the Parts Geek Mark and terms confusingly similar thereto in order to display "Sponsored Links" falsely communicates to consumers that Google's advertisers such as USAP are the Parts Geek, or are official Parts Geek affiliates, or that Parts Geek sponsors or endorses Google's advertisers.  In many cases, Google causes this confusion by publishing text in its "Sponsored Links" that makes further confusing use of the Parts Geek Mark.

54.    In some instances, such as with USAP's advertising, these links lead to websites that offer the products and services of Parts Geek's competitors, whether or not they also offer Parts Geek's own products and services.

55.    On information and belief, many of these Google advertisements lead Internet users to websites that are not Parts Geek websites, but directly compete with Parts Geek.

**Google's Search Engine-Based Keyword Advertising Program**

56.    Google offers a program called "AdWords" that displays advertisements to users of Google's search engine in the form of "Sponsored Links." Under its AdWords Program, Google offers advertisers the ability to select certain "keywords" that will trigger a "Sponsored

Link" to the advertiser's chosen website, which "Sponsored Link" Google will display above or alongside the purportedly "organic search results."

57.    On information and belief, advertisers pay Google each time a web user clicks on keyword-targeted "Sponsored Links" that appear on Google's "results" page.

58.    On information and belief, even the designation of these keyword-triggered "results" as "Sponsored Links" is confusing to many consumers, because Google does not inform consumers who has done the "sponsoring."

59.    When the keyword in question is a trademark or service mark, Google can make confusing use of that mark in two different ways: (1) as a keyword trigger and (2) as a part of the advertisement itself.

60.    Google could reasonably prevent trademark, service mark, and terms confusingly similar thereto from being used as keyword triggers or in the title or text of Sponsored Link advertisements by searching Registered Trade Mark (public records) and not allow bidding on such words.

### Google's and USAP's Combined Unauthorized Use of the Parts Geek Mark

61.    Parts Geek has not directly or indirectly given USAP or Google permission, authority, or license to use or sell the right to use the Parts Geek Mark for the promotion of any goods and services.

62.    Nevertheless, on information and belief, Google has in fact sold to USAP the "right" to use the Parts Geek Mark on several web sites or terms confusingly similar thereto as part of Google's search engine-based advertising program.  As a result, Google's "Sponsored Links" are expressly designed to draw consumers away from Parts Geek websites.

63.     Moreover, USAP's and Google's use of Parts Geek Mark within the titles and text that Google posts as a part of some "Sponsored Links" further misleadingly communicates to consumers that such links are endorsed or sponsored by Parts Geek or its affiliates, or that such websites are official Parts Geek websites.

64.     A consumer searching for the Parts Geek website using Google's search engine might be shown a "Sponsored Link" unrelated to Parts Geek that was displayed because a third-party advertiser like USAP purchased a Parts Geek Mark or a term confusingly similar thereto as a keyword trigger.  A significant number of consumers are likely to believe falsely that it was Parts Geek who "sponsored" the links that appears above or alongside the "organic search results."

65.     On information and belief, a significant portion of the "Sponsored Links" for which Google and USAP uses the Parts Geek Mark or terms confusingly similar thereto as keyword triggers link Internet users to: (i) websites of companies that compete with Parts Geek, one such company being USAP using multiple web sites; (ii) websites that sell Parts Geek products, but also sell a variety of products that compete with Parts Geek.  These unauthorized "Sponsored Links" appear in close and confusing proximity to both the listings generated by Google's purportedly "organic search results" system and the "Sponsored Links" that Google forces Parts Geek itself to purchase its own Mark from Google to reduce the likelihood that web users will be diverted to other websites.

66.     On information and belief, the use of the mark "Parts Geek," such as shown above, is also confusing to consumers because, in many instances, consumers will enter the exact web address of Parts Geek's website, "www.partsgeek.com," or some variant of Parts Geek's web address into Google's search engine expecting to receive the link for Parts Geek's website.

Due to Google's sale of the Parts Geek Mark and the use of such mark by USAP and to other third parties as keywords, such consumers are redirected to competitors of Parts Geek even though they originally intended to go to www.partsgeek.com. Accordingly, Google aided USAP and other third parties in "hijacking" consumers who use their search engines to navigate the World Wide Web. This interferes with Parts Geek's sales and business.

67.    On information and belief, Google's specific use of the Parts Geek Mark as keyword triggers in its advertising program allows Google and its advertisers to benefit financially from and trade off the goodwill and reputation of Parts Geek without having to incur any expense.

68.    On information and belief, Google's advertisers such as USAP have improperly used Google's programming to create "Sponsored Links" and other advertisements that either use terms that are confusingly similar to the Parts Geek Mark or are formatted in ways that are likely to cause confusion with Parts Geek and/or with the Parts Geek Mark.

69.    Google and USAP use in commerce the registered and common law trademarks of other companies, including Parts Geek, with full knowledge that consumers are likely to be confused and lured away from the websites that they intended to visit, and with the goal of financially benefiting Google and USAP to the detriment of Parts Geek and other trademark and service mark owners.

### Consumer Confusion and Harm to Parts Geek

70.    On information and belief, Google charges advertisers a fee every time a web user clicks on a keyword-triggered "Sponsored Link."

71.    USAP sells product through the "Sponsored Link," collects money for the sale and ships the products in interstate commerce.

72.    Even if web users realize that a given website is not affiliated with Parts Geek, once they reach it, the damage to Parts Geek has already been done.  Many such consumers are likely either to stay at the USAP or third-party advertiser's website or to discontinue their search for Parts Geek's website.  Web users may also associate the quality of the products and services offered on the third-party advertiser's website with those offered by Parts Geek, and if dissatisfied with such goods and services, may decide to avoid Parts Geek's products and services in the future.

73.    Although the above examples are illustrative of the problems created by USAP and Google, they by no means describe all the ways in which USAP's and Google's uses of the Parts Geek Mark are likely to confuse consumers.  Because of the fluid nature of the way Google's programming uses the Parts Geek Mark and displays advertising based on the mark, Google either is misleading or will mislead consumers in innumerable different ways.

74.    Among other things, the following facts and circumstances support the conclusion that USAP's and Google's use in commerce of the Parts Geek Mark is likely to cause consumer confusion:

A.    The Parts Geek Mark are exceptionally strong.

B.    USAP and Google use the actual Parts Geek Mark or terms confusingly similar thereto as keyword triggers and in advertisement text.

C.    USAP and other third-party advertisers on whose behalf Google uses the Parts Geek Mark or terms confusingly similar thereto generally sell products and services similar to the auto parts provided by Parts Geek, and in most cases are in direct competition with Parts Geek.

D.      USAP, Google and its third-party advertisers use similar facilities and the exact same marketing channels or parallel marketing channels as Parts Geek -- namely, the World Wide Web, and in particular, the context of Internet searching.

E.      On information and belief, purchasers are likely to exercise a minimal degree of care in the context of Internet searching generally and in purchasing goods and services online in particular.

F.      On information and belief, consumers have actually been confused as a result of USAP's and Google's conduct.

G.      USAP and Google were using the Parts Geek Mark or terms very similar to the mark after they were registered and after they became famous and distinctive.  On information and belief, USAP and Google did so with full knowledge of Parts Geek's rights in the Parts Geek Mark.  In fact, on information and belief, it is USAP's and Google's specific intent to use the Parts Geek Mark to profit from consumer's association of the Parts Geek Mark with Parts Geek.

### COUNT I
### TRADEMARK/SERVICE MARK INFRINGEMENT
### UNDER THE LANHAM ACT
### v. USAP AND GOOGLE

75.     Plaintiff incorporates herein the allegations of paragraphs 1-74 hereof as though set forth at length herein.

76.     Parts Geek possesses valid, federally registered trademark and service mark entitled to protection under the Lanham Act.

77.     Defendant USAP has used the Parts Geek Mark in commerce by bidding on Parts Geek's exact protected registered mark, advertising worldwide that Defendant USAP was in

actuality Parts Geek by selling product, being paid for and shipping parts in interstate commerce.

78.    Google has used the Parts Geek Mark in commerce in a number of ways as part of its search engine-based, keyword-triggered advertising programs, including (but not limited to) the following: (i) by allowing and/or encouraging third-party advertisers to bid on the Parts Geek Mark, or terms confusingly similar thereto, and paying Google to use such mark or terms to trigger the display of "Sponsored Link" advertisements that link to third-party advertisers' websites, which are displayed above or alongside purportedly "organic search results;" (ii) by causing such "Sponsored Link" advertisements to appear when web users have specifically attempted to find or access Parts Geek's website, with the express purpose of causing web users to visit websites other than those affiliated with Parts Geek; (iii) by including Parts Geek Mark in Google's proprietary directories of terms that trigger "Sponsored Link" advertisements; (iv) by causing "Sponsored Link" advertisements to appear in close proximity to Parts Geek Mark and links to legitimate Parts Geek-related websites; and (v) by causing Parts Geek Mark or terms confusingly similar to Parts Geek Mark to appear in the text or title of advertisements which Google calls "Sponsored Links." In short, Google has used the Parts Geek Mark in commerce in connection with the sale, offering for sale, distribution, or advertising of goods and services.

79.    USAP's and Google's unauthorized and intentional use of the Parts Geek Mark or terms confusingly similar thereto in connection with its search engine-based advertising programs infringes on Parts Geek's exclusive rights in its federally registered mark and is likely to cause, and in fact has caused, confusion, mistake or deception among consumers as to the source of the products and services offered by Google and its advertisers.

80.    Even after accessing the websites associated with "Sponsored Links," consumers are likely to be confused into believing that those websites and the information they contain are associated with, sponsored by, operated by, or otherwise formally affiliated with or supported by Parts Geek when that is not the case.

81.    USAP's and Google's unauthorized and intentional use of the registered Parts Geek Mark and terms confusingly similar thereto in connection with its search engine-based advertising programs constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §§1114(1).

82.    USAP's and Google's infringement of the Parts Geek Mark is willful and reflects USAP's and Google's intent to exploit the goodwill and strong brand recognition associated with the Parts Geek Mark.

83.    USAP's and Google's infringement has damaged Parts Geek in an amount to be determined.

84.    In addition thereto, USAP and Google have been unjustly enriched through their unlawful and unauthorized sales of the Parts Geek Mark and/or sales to consumers believing they were doing business with Plaintiff.

85.    USAP's and Google's infringement has caused and, unless restrained by this Court, will continue to cause Parts Geek irreparable injury.

86.    Parts Geek has no full, complete and adequate remedy at law for USAP's and Google's infringement.

## COUNT II
## CONTRIBUTORY TRADEMARK/SERVICE MARK INFRINGEMENT
## UNDER THE LANHAM ACT
## v. GOOGLE

87.    Plaintiff incorporates the allegations of paragraphs 1-86 as though set forth at length herein.

88.    With full knowledge of Parts Geek's rights in the Parts Geek Mark, Google has knowingly sold to third-party advertisers such as USAP the "rights" to use the Parts Geek Mark or terms confusingly similar thereto as a part of Google's search engine-based advertising programs.  The use of the Parts Geek Mark or terms confusingly similar thereto by third party advertisers is likely to cause confusion among consumers, and constitutes infringement of Parts Geek's rights in the Parts Geek Mark.

89.    The use of the Parts Geek Mark or terms confusingly similar thereto in Google's search engine in order to trigger the display of "Sponsored Links" that link to the websites of third-party advertisers above or alongside purportedly "organic search results" is likely to deceive or cause confusion among web users as to whether Parts Geek is the source of (or is sponsoring or affiliated with) the products and services offered on the third-party advertisers' websites.

90.    Alternatively, the use of Parts Geek Mark or terms confusingly similar thereto within the title and text of "Sponsored Link" advertisements by third-party advertisers is likely to deceive or cause confusion among web users as to whether Parts Geek is the source of (or is sponsoring or affiliated with) the products and services offered on the third-party advertisers' websites.

91.    Through its sale of the Parts Geek Mark and terms confusingly similar thereto to third-party advertisers, Google provides such third-party advertisers such as USAP with aid and material contribution to the third-party advertisers' violations of the Lanham Act.

92.    Google is therefore contributorily liable for the infringing use of the Parts Geek Mark by the third-party advertisers who use the Parts Geek Mark to trigger the display of "Sponsored Links."

93.    Google's contributory infringement is willful and reflects Google's intent to exploit the good will and strong brand recognition associated with the Parts Geek Mark.

94.    Parts Geek has been damaged by Google's contributory infringement in an amount to be determined at trial.

95.    In addition thereto, Google has been unjustly enriched through its unlawful and unauthorized sales to third parties of the Parts Geek Mark.

96.    Parts Geek has been, and absent injunctive relief will continue to be, irreparably harmed by Google's actions.

97.    Parts Geek has no full, complete and adequate remedy at law for the foregoing wrongful conduct.

**COUNT III**
**VICARIOUS TRADEMARK/SERVICE MARK INFRINGEMENT**
**UNDER THE LANHAM ACT**
**v. GOOGLE**

98.    Plaintiff incorporates the allegations of paragraphs 1-97 hereof as if fully set forth herein.

99.    Google has the right and ability to control the use of the Parts Geek Mark or terms confusingly similar to the Parts Geek Mark in its search engine-based advertising programs.

100.  Third-party advertisers' use of the Parts Geek Mark or terms confusingly similar thereto as keyword triggers in Google's search engine-based advertising program is likely to cause confusion among consumers, and constitutes infringement of Parts Geek's rights in the Parts Geek Mark.

101.  Third-party advertisers' use of the Parts Geek Mark or terms confusingly similar thereto in the title or text of "Sponsored Link" advertisements is likely to cause confusion among consumers, and constitutes infringement of Parts Geek's rights in the Parts Geek Mark.

102.  Google receives a direct financial benefit from the third-party advertisers' unauthorized use of the Parts Geek Mark or terms confusingly similar thereto.

103.  Google is therefore vicariously liable for the infringing use of the Parts Geek Mark by third-party advertisers who use the Parts Geek Mark to trigger the display of "Sponsored Links."

104.  Google's vicarious infringement is willful and reflects Google's intent to exploit the goodwill and strong brand recognition associated with the Parts Geek Mark.

105.  Parts Geek has been damaged by Google's vicarious infringement in an amount to be determined at trial.

106.  In addition thereto, Google has been unjustly enriched through its unlawful and unauthorized sales to third parties of the Parts Geek Mark.

107.  Parts Geek has been, and absent injunctive relief will continue to be, irreparably harmed by Google's actions.

108.  Parts Geek has no full, complete and adequate remedy at law for the foregoing wrongful conduct.

## COUNT IV
## FALSE REPRESENTATION UNDER THE LANHAM ACT
## v. USAP AND GOOGLE

109.  Plaintiff incorporates the allegations of paragraphs 1-108 hereof as if fully set forth herein.

110.  USAP's and Google's use of the Parts Geek Mark or terms confusingly similar thereto as keyword triggers in its search engine-based advertising programs conveys the false or misleading commercial impression to the public that the third-party advertisers listed as "Sponsored Links" above or alongside purportedly "organic search results," or their products or services, are approved, endorsed or sponsored by Parts Geek, or are otherwise affiliated with or supported by Parts Geek.

111.  USAP's and Google's use of the Parts Geek Mark or terms confusingly similar thereto in the title or text of "Sponsored Link" advertisements conveys the false or misleading commercial impression to the public that the third-party advertisers listed as "Sponsored Links" are approved, endorsed or sponsored by Parts Geek, or are otherwise affiliated with or supported by Parts Geek.

112.  These misleading uses of the Parts Geek Mark constitute a false designation of origin and/or a false or misleading description of fact and/or a false or misleading representation of fact, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

113.  USAP's and Google's false representations are willful and reflect Google's intent to exploit the goodwill and strong brand recognition associated with the Parts Geek Mark.

114.  USAP's and Google's false representations have damaged Parts Geek in an amount to be determined at trial.

115.   In addition thereto, USAP's and Google have been unjustly enriched through their unlawful and unauthorized use and sales to third parties of the Parts Geek Mark.

116.   Parts Geek has been, and absent injunctive relief will continue to be, irreparably harmed by Google's actions.

117.   Parts Geek has no full, complete and adequate remedy at law for Google's false representations.

**COUNT V**
**TRADEMARK/SERVICE MARK DILUTION**
**UNDER THE LANHAM ACT**
**v. USAP AND GOOGLE**

118.   Plaintiff incorporates the allegations of paragraphs 1-117 hereof as if fully set forth herein.

119.   The Parts Geek Mark is famous within the meaning of the Trademark Dilution Revision Act of 2006.  In particular, the following factors support the conclusion that the Parts Geek Mark is famous:

A.      Parts Geek has expended substantial amounts in advertising the Parts Geek Mark on a nationwide basis in a broad cross-section of prominent media for many years;

B.      The Parts Geek Mark has received massive publicity from third parties;

C.      Parts Geek has earned tens of millions of dollars in revenue on a nationwide basis in connection with the products and services that it has offered under the Parts Geek Mark;

D.      The Parts Geek Mark has achieved a high level of actual recognition among the consuming public; and

E.    Parts Geek has obtained federal trademark registration for its Parts Geek Mark.

120.  USAP's and Google's use of the Parts Geek Mark or terms confusingly similar thereto as keyword triggers in its search engine-based advertising programs has lessened and will continue to lessen the capacity of Parts Geek's famous and distinctive Parts Geek Mark to distinguish Parts Geek's products and services from those of others, and has diluted the distinctive quality of the famous and nationally recognized Parts Geek Mark.

121.  USAP's and Google's use of the Parts Geek Mark or terms confusingly similar thereto in the title of text of "Sponsored Link" advertisements has lessened and will continue to lessen the capacity of Parts Geek's famous and distinctive Parts Geek Mark to distinguish Parts Geek's products and services from those of others, and has diluted the distinctive quality of Parts Geek's famous and nationally recognized Parts Geek Mark.

122.  USAP's and Google's conduct as alleged above is likely to cause blurring of the Parts Geek Mark and impair the distinctiveness of the Parts Geek Mark.  Consumers are likely to associate USAP's and Google's use of the Parts Geek Mark or terms confusingly similar thereto with the Parts Geek Mark themselves, therefore:

A.    USAP and Google are making use of the Parts Geek Mark themselves or words or phrases confusingly similar to the Parts Geek Mark;

B.    The Parts Geek Mark has acquired tremendous distinctiveness through Parts Geek's promotion and use of the Parts Geek Mark in commerce since 1999;

C.    The Parts Geek Mark has achieved high levels of recognition among the consuming public;

D.      Parts Geek's commercial use of the Parts Geek Mark is substantially exclusive to Parts Geek and its agents and licensees;

E.      On information and belief, USAP's and Google's advertisers intend to make an association between USAP's and Google's uses of the Parts Geek Mark or terms confusingly similar thereto and the Parts Geek Mark themselves; and

F.      On information and belief, many consumers actually associate USAP's and Google's use of the Parts Geek Mark or terms confusingly similar thereto with the Parts Geek Mark.

123.   USAP's and Google's conduct as alleged above is also likely to cause tarnishment among the Parts Geek Mark that harms the reputation of the Parts Geek Mark because of the similarity between USAP's and Google's uses of the Parts Geek Mark or terms confusingly similar thereto and the Parts Geek Mark themselves.  In particular, many of the "Sponsored Links" lead consumers to websites that offer lower quality services than Parts Geek offers or post materials that are misleading or distasteful.

124.   On information and belief, USAP and Google have derived and continue to derive substantial revenue and profits from the past and ongoing dilution of the Parts Geek Mark as a result of its unauthorized uses of the Parts Geek Mark and terms confusingly similar thereto.

125.   USAP's and Google's use of the Parts Geek Mark constitutes dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

126.   USAP's and Google's dilution of the Parts Geek Mark has caused Parts Geek damage in an amount to be determined at trial.

127.   In addition thereto, USAP and Google have been unjustly enriched through their unlawful and unauthorized sales of the Parts Geek Mark.

128.   Parts Geek has been, and absent injunctive relief will continue to be, irreparably harmed by USAP's and Google's actions.

129.   Parts Geek has no full, complete and adequate remedy at law for USAP's and Google's dilution of the Parts Geek Mark.

## COUNT VI
## FOR TRADEMARK INFRINGEMENT UNDER NEW JERSEY LAW
## v. USAP AND GOOGLE

130.   Plaintiff incorporates the allegations of paragraphs 1-129 hereof as if fully set forth herein.

131.   Parts Geek has the common law right to the trademark Parts Geek in the State of New Jersey.

132.   USAP's and Google's acts, as described above, constitute trademark infringement of the Parts Geek trademark under New Jersey law, resulting in irreparable injury to Parts Geek. USAP and Google are also liable for contributory trademark infringement and vicarious trademark infringement of the Parts Geek trademark under New Jersey law.

133.   USAP's and Google's infringement has damaged Parts Geek in an amount to be determined at trial.

134.   In addition thereto, USAP and Google have been unjustly enriched through its unlawful and unauthorized sales to third parties of the Parts Geek Mark and/or sales of products to consumers.

135.   USAP's and Google's infringement has caused and, unless restrained by this Court, will continue to cause Parts Geek irreparable injury.

136.   Parts Geek has no full, complete and adequate remedy at law for USAP's and Google's infringement of its common law trademark rights.

**COUNT VII**
**UNFAIR TRADE PRACTICE UNDER NJSA § 56:8-2**
**v. USAP AND GOOGLE**

137.  Plaintiff incorporates the allegations of paragraphs 1-136 hereof as if fully set forth herein.

138.  Parts Geek Mark has acquired a secondary meaning associated with Parts Geek. USAP and Google have used the Parts Geek Mark unfairly to the detriment of Parts Geek. USAP's and Google's use of the Parts Geek Mark is likely to confuse prospective buyers of Parts Geek goods and services even if they exercise ordinary caution in their purchasing decisions.  USAP's and Google's acts as described above are in violation of New Jersey's unfair trade practices Act.

139.  As a result of USAP's and Google's conduct, Parts Geek has suffered and will continue to suffer damage, including damage to its reputation because of consumer confusion as to the origin or sponsorship of the products and services advertised through Google's websites.

140.  In addition thereto, USAP and Google have been unjustly enriched through its unlawful and unauthorized sales to third parties of the Parts Geek Mark and/or sales of product to consumers.

141.  Parts Geek has been, and absent injunctive relief will continue to be, irreparably harmed by USAP's and Google's actions.

142.  Parts Geek has no full, complete and adequate remedy at law for USAP's and Google's unfair competition.

**COUNT VIII**
**NEGLIGENCE**
**v. GOOGLE**

143.  Plaintiff incorporates the allegations of paragraphs 1-142 hereof as if fully set forth herein.

144.  Plaintiff has an advertising agreement with Defendant Google.

145.  Defendant Google has a duty to use due care regarding the protection of Plaintiff's trademark and business information by reason of its advertising agreements and published policies.

146.  Defendant Google failed to use such due care which is the proximate cause of harm to Plaintiff by failing to police its policies regarding:

     A.     Multiple pay per click accounts of others including USAP thereby allowing multiple websites owned and operated by the same entity to bid on the same ad words creating a fake sense of a variety of advertising; even though the web user experience is the same since pricing, catalogs, parts numbers and parts are the same.

     B.     Multiple websites promoting the same keywords and duplicative content, thereby allowing Defendant USAP to promote well in excess of 100 websites to appear to be differently owned websites and thereby take up results for "organic traffic" sites; creating an uneven playing field weighing heavily in favor of USAP.

     C.     Failure to perform due diligence regarding registration of website ownership concerning its advertisers to determine that such multiple websites owned by advertisers or content providers such as Defendant USAP provide false results.

**COUNT IX**
**RICO**
**v. USAP**

147.  Plaintiff incorporates the allegations of paragraphs 1-146 hereof as if fully set forth herein.

148. USAP, along with Jenny McLane, partstrain, autopartswarehouse and other multiple identities and entities owned and or controlled by USAP comprise an "enterprise", as defined in 18 U.S.C. § 1961 and in NJSA 2C:41-1(c) operating in interstate commerce.

149. USAP, Jenny McLane and the other entities referenced in 148. is a "person" within the meaning of NJSA 2C:41-1(b).

150. The enterprise's conduct is a structured pattern of racketeering activities of deceptive business practices, misrepresentation, conversion, unjust enrichment, consumer fraud, mail fraud, wire fraud, computer fraud, internet fraud, illegal theft of electronic data and trademark infringement.

151. In violation of 18 U.S.C. § 1962 and NJSA 2C:41-2 (d), USAP systematically, wrongfully and deceptively engaged in multiple predicate acts consisting of utilizing the registered federal trademark of Plaintiff and other companies such as 1A Auto and Rock Auto in a pattern of trademark infringement, conversion of the valuable name and sales that belong to the victims, followed by use of the mails and delivery in interstate commerce of auto parts purchased by customers rightfully belonging to the victimized entities. USAP uses different telephone numbers, employer identification numbers and advertising managers to disguise and hide its ownership.

152. As a direct and proximate result of the foregoing, Plaintiff has suffered damage and loss and USAP has been improperly and illegally enriched.

153. Plaintiff is entitled to the remedy of disgorgement of all sums realized by USAP through its RICO violations.

## COUNT X
## COMPUTER FRAUD
### v. USAP

154.  Plaintiff incorporates the allegations of paragraphs 1-153 hereof as if fully set forth herein.

155.  Parts Geek prominently displays the Terms of Use of its website.  By using the website, the user agrees to the Terms of Use.  Terms of Use #1 limits the authority of the user as follows:

> 1. Rights.
> This site is operated by Parts Geek, a federally registered trademark and contains material which is derived in whole or in part from Parts Geek and other sources. You may not use for your own purposes, modify, copy, reproduce, upload, post, transmit or distribute in any way any material from this site including code and software.

156.  UASP improperly and unlawfully "crawled" the website and converted Parts Geek's data from its website to take Parts Geek's proprietary data and pricing for thousands of auto parts.  A "crawler" is an automated program that scours the website and takes data it is instructed to take.

157.  USAP's violation of the Terms of Use provisions of the Parts Geek website, www.partsgeek.com circumvented the technology measures designed to protect the access to proprietary Parts Geek business property such as pricing.

158.  By unlawfully "crawling" and obtaining Parts Geek's proprietary data in excess of the authority given, USAP has violated the Computer Fraud and Abuse Act, 18 U.S.C.  § 1030(a)(2)(c) and has attempted to convert and has converted the contents of Parts Geek's website to their own use and economic benefit.

159.  Plaintiff is entitled to award of damages determined to have been sustained as a result of USAP's illegal conduct as alleged herein.

160.  Pursuant to 18 U.S.C. §1030 (g), Plaintiff is entitled to award of injunctive relief to prevent USAP from engaging in this illegal and unlawful conduct in the future.

**WHEREFORE**, Parts Geek prays for judgment in its favor and against:

1.    Google as follows:

A.    Preliminarily and permanently enjoining Google and its officers, directors, partners, agents, subcontractors, servants, employees, representatives, franchisees, licensees, subsidiaries, parents, and related companies or entities, and all others acting in concert or participation with it from:

- directly or indirectly selling or offering for sale the Parts Geek Mark or other terms confusingly similar to the Parts Geek Mark for use in its search engine-based advertising programs to anyone other than Parts Geek or its authorized licensees;

- continuing to post advertisements for anyone other than Parts Geek and its authorized licensees because Internet users have run a search on Google's search engine using search terms that are identical or confusingly similar to the Parts Geek Mark;

- continuing to post titles or text of paid or keyword-triggered search engine results that falsely communicate to consumers that such links are endorsed, sponsored, or supported by Parts Geek or formally affiliated with Parts Geek;

- infringing, or causing any other entity to infringe the Parts Geek Mark;

- unfairly competing with Parts Geek in any manner whatsoever; and

making any use of the Parts Geek Mark and/or terms confusingly similar thereto unless specifically authorized by Parts Geek

B.    Directing an accounting to determine all gains and profits, obtained by Google as a result of its wrongful actions;

C.    Directing disgorgement to Parts Geek of all gains, and profits realized by Google as a result of its wrongful actions;

D.    Awarding Parts Geek all damages caused by Google's wrongful actions;

E.    Awarding Parts Geek an amount sufficient to conduct a corrective advertising campaign to dispel the effects of Google's wrongful conduct and confusing and misleading advertising;

F.    Directing Google to post on its website corrective advertising in a manner and form to be established by the Court;

G.    Directing Google to file with this Court and serve on Parts Geek within thirty (30) days after the service of the injunction, a report in writing, under oath, that describes in detail the manner and form in which Google has complied with the orders of this Court; and

H.    Granting Parts Geek such other and further relief as the Court may deem just and proper in the circumstances.

2.    USAP as follows:

A.    Preliminarily and permanently enjoining USAP and its officers, directors, partners, agents, subcontractors, servants, employees, representatives, franchisees, licensees, subsidiaries, parents, and related companies or entities, and all others acting in concert or participation with it from:

- directly or indirectly bidding on the Parts Geek Mark or other terms confusingly similar to the Parts Geek Mark to be displayed in Google's search engine-based advertising;

- continuing to post advertisements on Google's search engine using search terms that are identical or confusingly similar to the Parts Geek Mark;

- continuing to post titles or text that falsely communicate to consumers that such links are endorsed, sponsored, or supported by Parts Geek or formally affiliated with Parts Geek;

- infringing, or causing any other entity to infringe the Parts Geek Mark;

- unfairly competing with Parts Geek in any manner whatsoever;

- making any use of the Parts Geek Mark and/or terms confusingly similar thereto unless specifically authorized by Parts Geek; and

- preventing USAP from engaging in "crawling" in violation of 18 U.S.C. §1030 (a)(2)(c).

B.      Directing an accounting to determine all gains and profits realized by USAP as a result of its wrongful actions;

C.      Directing disgorgement to Parts Geek of all gains, and profits realized by USAP as a result of its wrongful actions;

D.      Awarding Parts Geek all damages caused by USAP's wrongful actions;

E.      Awarding Parts Geek treble the amount of its damages, together with the costs of this suit, including reasonable attorneys' fees and expenses and prejudgment interest, pursuant to 15 U.S.C. § 1117 and under NJSA 2C41-4 and all other applicable provisions and principles of federal and New Jersey law;

F.      Awarding Parts Geek an amount sufficient to conduct a corrective advertising campaign to dispel the effects of USAP's wrongful conduct and confusing and misleading advertising;

G.      Directing USAP to file with this Court and serve on Parts Geek within thirty (30) days after the service of the injunction, a report in writing, under oath, that describes in detail the manner and form in which USAP has complied with the orders of this Court; and

H.      Granting Parts Geek such other and further relief as the Court may deem just and proper under the circumstances.

## TRIAL BY JURY

Plaintiff demands a trial by jury as to all issues.

WEIR & PARTNERS, LLP


By: /s/ Steven E. Angstreich
      Steven E. Angstreich
      Carolyn Lindheim
      Attorneys for Plaintiff

      sangstreich@weirpartners.com
      clindheim@weirpartners.com
      10 Melrose Avenue
      Suite 450
      Cherry Hill, NJ 08003
      856-740-1490


Dated:  November 2, 2009.