HANGLEY ARONCHICK SEGAL & PUDLIN
Michele D. Hangley (MH0373)
Dylan J. Steinberg (DS7855)
20 Brace Road, Suite 201
Cherry Hill, NJ 08034
(856) 616-2100
Attorneys for Google Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON VICINAGE

| | |
|---|---|
| PARTS GEEK, LLC<br><br>                Plaintiff,<br><br>   v.<br><br>U.S. AUTO PARTS NETWORK, INC.<br><br>        and<br>GOOGLE, INC.<br><br>               Defendants. | Case No. 3:09-cv-05578 MLC-LHG<br><br>**DEFENDANT GOOGLE INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO TRANSFER**<br><br>**<u>MOTION DATE</u>**<br>**FEBRUARY 16, 2010**<br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................ 1

II.   RELEVANT ALLEGATIONS IN THE COMPLAINT ............................... 2

III.  ARGUMENT ................................................................... 5

    A.   The Court should dismiss the case because Parts Geek sued
        in the wrong forum. ............................................... 5

        1.   The forum-selection clause is mandatory and
            exclusive. ................................................... 5

        2.   The forum-selection clause applies to all of Parts
            Geek's claims. ............................................... 6

        3.   The forum-selection clause is presumptively valid and
            should be enforced. ......................................... 12

    B.   Alternatively, the Court should transfer this action to the
        Northern District of California under 28 U.S.C. § 1404(a)............... 17

    C.   If the Court does not dismiss or transfer this action for
        improper venue, it should dismiss Counts I-III and V-VII for
        lack of standing. ................................................. 20

        1.   Because Parts Geek is at best a mere licensee of the
            trademark, it lacks standing to sue for trademark
            infringement under the Lanham Act (Counts I-III). ............... 21

        2.   Because Parts Geek does not own the trademark, it
            lacks standing to sue for dilution under the Lanham
            Act (Count V) and for trademark infringement and
            unfair trade practices under New Jersey law (Counts
            VI-VII)...................................................... 23

    D.   If the Court reaches the substance of Parts Geek's claims, it
        should dismiss Count III (Vicarious Infringement) and
        Count V (Dilution) for failure to state a claim. ..................... 25

        1.   The Complaint fails to state a claim for vicarious
            infringement because Parts Geek has not alleged that
            there is an actual or apparent partnership between
            USAP and Google. ........................................... 25

        2.   Parts Geek has not adequately alleged non-niche fame
            and thus its dilution claim (Count V) must be
            dismissed. .................................................. 27

IV.   CONCLUSION................................................................. 29

# TABLE OF AUTHORITIES

## Federal Cases

Am. Telephone & Telegraph Co. v. Winback & Conserve
Prog., Inc., 42 F.3d 1421 (3d Cir. 1994)....................... 25, 26

Anastasi Bros. Corp. v. St. Paul Fire & Marine Ins. Co., 519 F.
Supp. 862 (E.D. Pa. 1981) ...................................... 15

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)...................... 28

Ass'n of Coop. Members, Inc. v. Farmland Indus., Inc., 684
F.2d 1134 (5th Cir. 1982) ...................................... 22

BABN Techs. Corp. v. Bruno, 25 F. Supp. 2d 593 (E.D. Pa.
1998) .......................................................... 13

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)............... 27, 28

Bennett v. Hosting.com, Inc., 2008 WL 4951020 (N.D. Cal.
Nov. 18, 2008) ................................................. 9, 11

Brill v. Burlington Northern, Inc., 590 F. Supp. 893 (D. Del.
1984) .......................................................... 4

Carnival Cruise Lines, Inc. v. Shute Et Vir, 499 U.S. 585
(1991)......................................................... 10

Coastal Steel Corp v. Tilghman Wheelabarator, Ltd, 709 F.2d
190 (3d Cir. 1983).............................................. 11

Commerce Commercial Leasing, LLC v. Jay's Fabric Ctr., 2004
WL 2457737 (E.D. Pa. Nov. 2, 2004) ............................. 15

Componentone, L.L.C. v. Componentart, Inc., No.
02:05cv1122, 2007 WL 4302108 (W.D. Pa. Dec. 6, 2007) .......... 27, 28

Crescent Int'l, Inc. v. Avatar Cmty., Inc., 857 F.2d 943 (3d Cir.
1988) .......................................................... 10, 11

Drucker's, Inc. v. Pioneer Electronics (USA), Inc., 1993 WL
431162 (D.N.J. Oct. 20, 1993)................................... 16

Falcone v. Mediterranean Shipping Co., 2002 WL 32348270
(E.D. Pa. Apr. 3, 2002) ........................................ 15, 16

Feldman v. Google, Inc., 513 F. Supp. 2d 229 (E.D. Pa. 2007) .... passim

Ferketich v. Carnival Cruise Lines, 2002 WL 31371977 (E.D.
Pa. Oct. 17, 2002) ............................................. 15

Foster v. Chesapeake Ins. Co., Ltd., 933 F.2d 1207 (3d Cir.
1991).......................................................... 14

Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc., 783 F.2d
352 (3d Cir. 1986).............................................. 13

Hard Rock Café Licensing Corp. v. Concession Servs., Inc.,
955 F.2d 1143 (7th Cir. 1992) .................................. 25, 26, 27

Hedges v. United States, 404 F.3d 744 (3d Cir. 2005) ........... 2

Hodes v. S.N.C. Achille Lauro ed Altri-Gestione, 858 F.2d 905
(3d Cir. 1988).................................................. 14

Hoffer v. InfoSpace.com, Inc., 102 F. Supp. 2d 556 (D.N.J. 2000) ................................................................ 15

Holiday Inns, Inc. v. Trump, 617 F. Supp. 1443 (D.N.J. 1985) ............................ 24

ICEE Distrib., Inc. v. J&J Snack Foods Corp., 325 F.3d 586 (5th Cir. 2003)................................................................ 23

In re Diaz Contracting, Inc., 817 F.2d 1047 (3d Cir. 1987)................. 12

In re President's Comm'n on Organized Crime Subpoena of Scarfo, 783 F.2d 370 (3d Cir. 1986) ................................... 20

Intermetals Corp. v. Hanover Int'l Aktiengesellschaft Fur Industrieversicherungen, 188 F. Supp. 2d 454 (D.N.J. 2001) ................... 12

John Wyeth & Brother Ltd. v. Cigna Int'l Corp., 119 F.3d 1070 (3d Cir. 1997)................................................................ 6, 7

Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995) ............................. 5

Major League Baseball Promotion Corp. v. Colour-Tex, Inc., 729 F. Supp. 1035 (D.N.J. 1990)................................... 24

Mercedes-Benz USA, LLC v. ATX Group, Inc., 2009 WL 2255727 (D.N.J. July 27, 2009).................................... 21

MoneyGram Payment Systems, Inc. v. Consorcio Oriental, S.A., 65 Fed. App'x. 844 (3d Cir. May 21, 2003) ................... 12

Nagy v. Consol. Servs. Group, Inc., 2009 U.S. Dist. LEXIS 46947 (D.N.J. June 3, 2009)................................... 14

Nat'l Licensing Ass'n., LLC v. Inland Joseph Fruit Co., 361 F. Supp. 2d 1244 (E.D. Wash. 2004) .............................. 21, 22

Person v. Google Inc., 456 F. Supp. 2d 488 ................................... 10

Quabaug Rubber Co. v. Fabiano Shoe Co., Inc., 567 F.2d 154 (1st Cir. 1977) ................................................................ 22, 24

Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp., 937 F. Supp. 204 ................................... 24

Salovaara v. Jackson Nat. Life Ins. Co., 246 F.3d 289 (3d Cir. 2001) ................................................................ 5, 7, 10

Sonnenberg v. Prospect Park Fin. Corp., 1991 WL 329755 (D.N.J. Aug. 20, 1991)................................................ 4

Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417 (1984)................................................................ 27

STX, Inc. v. Bauer USA, Inc., 1997 WL 337578 (N.D. Cal. June 5, 1997)................................................................ 23

Suhre Assocs., Inc. v. Interroll Corp., 2006 U.S. Dist. LEXIS 3474 (D.N.J. Jan. 30, 2006) ............................... 6, 14, 18, 19

Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C., 212 F.3d 157 (3d Cir. 2000)................................... 28

Top Tobacco, L.P. v. N. Atlantic Operating Co., Inc., 509 F.3d 380 (7th Cir. 2007)................................................ 27, 28

Upper Deck Authenticated, Ltd. v. CPG Direct, 971 F. Supp. 1337 (S.D. Cal. 1997) ................................... 22

Varsity Gold, Inc. v. Lunenfeld, 2008 WL 5243517 (D. Md.
Dec. 12, 2008)................................................................. 10

Warth v. Seldin, 422 U.S. 490 (1975)................................. 20

### State Cases

Am. Home Mortgage Corp. v. Am. Home Mortgage Corp., 814
A.2d 1165 (N.J. Super. Ct. App. Div. 2003) ..................... 24

### Federal Statutes

15 U.S.C. § 1125(c)............................................................ 23, 27

15 U.S.C. § 1127 ............................................................... 21

Pub. L. 109-312 120 Stat. 1730 (2006)............................... 27

### State Statutes

NJSA § 56:8-2 .................................................................. 20

### Federal Rules

Fed. R. Civ. P. 12(b)(6)....................................................... 5

# I.    INTRODUCTION

Plaintiff Parts Geek, LLC ("Parts Geek") brings this action against Defendants U.S. Auto Parts Network, Inc. ("USAP") and Google Inc. ("Google") for the alleged unauthorized use of the Parts Geek trademark on Google's search engine as part of Google's advertisement programs.[1]

The threshold issue before the Court is whether this case belongs in this venue.  It does not.  Under an advertisement contract with Google, Parts Geek voluntarily agreed to a mandatory and exclusive forum-selection clause, which expressly provides that "all claims . . . relating to . . . the Google Program(s)," which the Contract defines to mean Google's advertising programs, "shall be litigated exclusively in . . . Santa Clara County, California."[2]

Parts Geek's Complaint falls squarely within this clause.  The entire Complaint focuses exclusively on the allegedly unauthorized use of the Parts Geek trademark as part of Google's advertising programs.  In fact, the Complaint expressly invokes the Contract by alleging that Parts Geek has an "advertisement agreement" with Google and that, "by reason of its advertisement agreement,"

---

[1] Counts I-VII allege claims under the Lanham Act or analogous state law.  Count VIII alleges a negligence claim based on the Parts Geek's advertising contract with Google.  Count IX alleges a state and federal RICO claim against USAP, and Count X alleges a Computer Fraud and Abuse Act claim against USAP.  Counts I and IV-VII are pled against both defendants, Counts II, III and VIII are pled against Google only, and Counts IX and X are pled against USAP only.

[2] Declaration of Anita Joseph, Exhibit 1 at 3.  In the Contract, the forum-selection clause is formatted in all-capital letters.  Throughout this brief, the forum selection clause is formatted in upper- and lowercase letters.

Google owes a "duty to use due care regarding the protection of Plaintiff's trademark and business information." Compl. ¶¶ 144-45.  Because Parts Geek brought this suit in the wrong forum in violation of the forum-selection clause, the Court should dismiss this action or, in the alternative, transfer the action to the U.S. District Court for the Northern District of California under 28 U.S.C. § 1404(a).

If the Court concludes that Parts Geek has satisfied its heavy burden of showing why the forum-selection clause should not be enforced, the Court should dismiss Counts I-III and V-VII of the Complaint because Parts Geek, by its own allegations, is at best a mere licensee of the Parts Geek mark and lacks standing to sue for trademark infringement or dilution.  *See* Compl. ¶¶ 29-30.

Finally, if the Court reaches the substance of Parts Geek's claims, it should dismiss Count III (Vicarious Infringement) and Count V (Dilution) for failure to state a claim.  Count III should be dismissed because Parts Geek has not alleged that there is an actual or apparent partnership between USAP and Google, as required to state a vicarious-infringement claim.  Count V should be dismissed because Parts Geek has failed to allege that the Parts Geek trademark is widely recognized by the general consuming public, as required to state a dilution claim.

## II.   RELEVANT ALLEGATIONS IN THE COMPLAINT[3]

Google owns and operates one of the world's most-used Internet search

---

[3] For the purpose of this pleading only, Google assumes, as it must, that all properly pled allegations in the Complaint are true. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  Google disagrees with, and expressly reserves its right to challenge, those allegations.

engines. Compl. ¶ 3. In response to search queries entered by Google users, Google's search engine generates a list of websites from a database that are responsive to the search. *Id.* ¶ 4. Parts Geek refers to these search results as "organic search results." *Id.* Along with organic search results, Google also may display advertisements—known as "Sponsored Links"—to Google users. *Id.* ¶ 5. The Sponsored Links are part of Google's AdWords program, which businesses use to promote their products and services with targeted advertising. *Id.* ¶ 56. The AdWords program offers businesses the ability to bid on certain keywords that, when entered by users, will trigger a Sponsored Link to display along with Google's search results. *Id.* ¶ 56. The advertiser then pays Google each time a user clicks on its Sponsored Link. *Id.* ¶ 57.

Parts Geek and USAP both participate in Google's AdWords program to display Sponsored Links on Google's websites and other partner properties. As part of such participation, Parts Geek and USAP both entered into an advertising contract with Google ("Contract"). The Contract contains a mandatory and exclusive forum-selection and choice-of-law clause, which states:

> **9.     Miscellaneous.** The Agreement **must** be . . . governed by California law except for its conflicts of laws principles. All claims arising out of **or** relating to this Agreement or **or** the Google Program(s) **shall** be litigated **exclusively** in the federal or state courts of Santa Clara County, California, USA, and Google and Customer consent to personal jurisdiction in those courts.[4]

---

[4] Joseph Decl., Exh. 1 at 3 (emphasis added). Although Parts Geek did not attach the Contract to the Complaint, Google may properly reference and rely on the terms of that Contract in this Motion to Dismiss, because the Complaint expressly

The Contract defines "Google Program(s)" to mean Google's advertising programs.

This case concerns the alleged unauthorized use of the Parts Geek trademark as part of Google's AdWords program. In its Complaint, Parts Geek alleges that it is an online seller of auto parts in the United States and the licensee of the Parts Geek trademark. Compl. ¶¶ 1, 30. Parts Geek further alleges that Google has sold to USAP and other third parties that participate in Google's AdWords program "the right to use the Parts Geek Mark or words, phrases, or terms confusingly similar to the mark, as keyword triggers." *Id.* at 5. Parts Geek alleges that these third-party advertisements are then displayed as Sponsored Links on Google when consumers enter the Parts Geek mark as a keyword into Google's search engine. *Id.* Based on these allegations, Parts Geek filed a Complaint against USAP and Google in this forum—instead of the contractually-agreed forum of Santa Clara County, California—alleging various trademark-infringement and dilution claims under federal and state law.

---

refers to the Contract. *See* Compl. ¶¶ 144-45; *Sonnenberg v. Prospect Park Fin. Corp.*, 1991 WL 329755, at *7 (D.N.J. Aug. 20, 1991) ("Where an action is founded upon a contract or obligation evidenced by some other document which is referred to repeatedly within the pleading but has not been annexed thereto, it may be appropriate to consider the document as a whole although it has been submitted by the defendant.") (citations omitted); *Brill v. Burlington Northern, Inc.*, 590 F. Supp. 893, 895 n.2 (D. Del. 1984) (holding that the court could properly consider documents that were referenced in, but not attached to, the Complaint).

## III.   ARGUMENT

**A.   The Court should dismiss the case because Parts Geek sued in the wrong forum.**

Where, as here, a valid forum-selection clause designates another forum as the exclusive venue for litigation, dismissal is proper under Federal Rule of Civil Procedure 12(b)(6).[5]  *See Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 297-99 (3d Cir. 2001) (holding that "a 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause"); *id.* at 299 ("[W]hen a defendant moves under Rule 12, a district court retains the judicial power to dismiss notwithstanding its consideration of [an alternative motion to transfer under] § 1404.").  The Court should dismiss the Complaint under Rule 12(b)(6) because:  (1) the forum-selection clause is mandatory and exclusive; (2) the forum-selection clause covers Parts Geek's Complaint; and (3) Parts Geek cannot carry its heavy burden of proving that the clause is unenforceable.

**1.   The forum-selection clause is mandatory and exclusive.**

The forum-selection clause states that "all claims . . . relating to . . . the Google Program(s) **shall** be litigated **exclusively** in . . . Santa Clara County, California."  Joseph Decl., Exh. 1 at 3 (emphasis added).  The references to "shall" and "exclusively" in the forum-selection clause render the clause mandatory, not optional, in determining the proper venue.  *See, e.g., Suhre Assocs, Inc. v. Interroll*

---

[5] In federal court, the effect to be given a forum-selection clause "is determined by federal not state law."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995).

*Corp.*, 2006 U.S. Dist. LEXIS 3474 (D.N.J. Jan. 30, 2006) (Cooper, J.) (holding

that a forum-selection clause is mandatory because it provides that litigation "will"

take place in a specific forum); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 246

(E.D. Pa. 2007) (holding that a forum-selection clause which states that the

agreement "must" be adjudicated in a specific county "makes clear that venue, the

place of suit, lies exclusively in the designated county").

**2.      The forum-selection clause applies to all of Parts Geek's claims.**

**a.      The forum-selection clause covers all claims "related to" Google's advertising programs.**

All of Parts Geek's claims fall within the broad reach of the forum-selection

clause in the Contract:  "All claims arising out of **or relating to** this Agreement **or**

the Google Program(s) shall be litigated exclusively in the federal or state courts of

Santa Clara County, California, USA, and Google and Customer consent to

personal jurisdiction in those courts."  Joseph Decl., Exh. 1 at 3 (emphasis added).

Unlike forum-selection clauses limited to litigation "arising from" the contract, the

forum-selection clause here, by its own plain terms, broadly covers "all claims . . .

relating to . . . Google program(s)," which are contractually defined to include

Google's advertising programs. *Id.*  Thus, any claim between Parts Geek and

Google relating to Google's advertising programs—regardless whether such claim

is specifically tied to the Contract—is covered by the forum-selection clause.

Third Circuit law compels this interpretation.  First, in *John Wyeth &*

*Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070 (3d Cir. 1997) (Alito, J.), the

Third Circuit considered the breadth of a forum-selection clause that covered "any dispute arising under or out of **or in relation to** this Agreement." *Id.* at 1072 (emphasis added). The court noted that the phrase "in relation to" was "sweeping" and "extremely broad" and held that it covered all disputes with a "logical or causal connection" to the subject of the clause, which, in that case, was the Agreement. *Id.* at 1074, 1076. In so holding, the court rejected the argument that the clause covered only those disputes that were "based upon" or "gr[e]w out of" the agreement, reasoning that this interpretation would distort the plain language of the clause. *Id.* at 1074.

Second, in *Salovaara*, the forum-selection clause applied to "any claim related directly or indirectly to this agreement." *Salovaara*, 246 F.3d at 300. The court interpreted "related to" to cover all claims involving the same "subject matter" as the agreement. *Id.* Under that interpretation, the court held that it was "quite clear" that the clause covered claims for insider trading and fraud that concerned the same subject matter as the agreement—even though the acts giving rise to the claims had occurred before the agreement was formed. *Id.* ("Since this lawsuit involves that subject matter, it is covered by the forum selection clause.").

The forum-selection clause here uses the same broad "related to" language that the Third Circuit interpreted in the above two cases. The clause here is broader, however, because it covers not only all claims "relating to" the Contract itself, but also those claims "relating to" Google's advertising programs. Thus, Parts Geek's Complaint will be subject to the forum-selection clause if it has a

7

"logical or causal connection" to Google's advertising programs (*John Wyeth*) or involves the "same subject matter" as those programs (*Salovaara*).

### b. The Complaint is "related to" Google's advertising programs.

All of the claims in the Complaint have a "logical or causal connection" to Google's advertising programs or share the "same subject matter" as such programs and thus fall within the broad reach of the forum-selection clause. By its own terms, nearly the entire Complaint is focused on the unauthorized use of the Parts Geek trademark as part of Google's advertising programs. *See* Compl. ¶ 2 ("This lawsuit involves [the] unauthorized and intentional use of the Parts Geek's Mark through Google's technology."). Every misconduct that Parts Geek alleges against Google occurs in connection with Google's advertising programs.[6] The Complaint expressly and repeatedly references Google's "advertising program(s)," the "advertisements" placed on Google through such advertising programs, and the alleged unauthorized use of the Parts Geek trademark through such advertising programs. *See, e.g.*, Compl. ¶¶ 5, 8, 38, 48, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 62, 63, 65, 66, 67, 68, 70, 71, 73, 74, 78, 79, 80, 81, 88, 89, 90, 91, 92, 99, 100, 101, 102, 103, 110, 111, 120, 121, 122, 123, 139, 144, 145, 146. These numerous allegations render the Complaint "related to" Google's advertising programs and trigger the forum-selection clause.

---

[6] Counts I-VII plead Lanham Act and analogous state law claims based on the alleged misuse of Parts Geek's trademark in Google's advertising programs. Count VIII (negligence) also focuses on Google's advertising programs. *See*

Were that not enough, the Complaint also expressly refers to and invokes the Contract. It alleges that Parts Geek has an "advertisement agreement" with Google and that, "by reason of its advertisement agreement," Google owes a "duty to use due care regarding the protection of Plaintiff's trademark and business information." Compl. ¶¶ 144-45. The Complaint then seeks to hold Google liable for breaching this contractual duty by failing to use due care to protect the Parts Geek mark. *Id.* Parts Geek cannot invoke provisions in the Contract to attempt to construct a case against Google while at the same time avoiding the broad forum-selection provision in that very same Contract that requires it to litigate its case in another judicial district.

Finally, the Complaint alleges that Parts Geek has suffered damages in part because it is forced to bid on the "Parts Geek" keyword under Google's AdWords program to ensure that the Parts Geek website appears as a Sponsored Link in Google's search results. *See* Compl. ¶ 65. Thus, the alleged damage suffered by Parts Geek—a necessary element of every claim in the Complaint—also implicates the AdWords Contract and therefore the forum-selection clause in that same Contract. *See Bennett v. Hosting.com, Inc.*, 2008 WL 4951020, at *3 (N.D. Cal. Nov. 18, 2008) (enforcing a forum-selection clause in part because some of the claims in the Complaint "might require reference to the Agreement in order to determine damages").

---

Compl. ¶¶ 144-146. Counts IX and X are not pled against Google.

Accordingly, Parts Geek's claims are "related to" Google's advertising programs and are therefore covered by the forum-selection clause.[7]

   **c.   Parts Geek's claims are subject to the forum-selection clause even though they are non-contractual.**

A forum-selection clause is not limited solely to contractual claims. Courts routinely apply forum-selection clauses to non-contractual claims within the clause's reach. *See, e.g., Carnival Cruise Lines, Inc. v. Shute Et Vir*, 499 U.S. 585, 588-89 (1991) (applying a forum-selection clause to a personal-injury claim); *Salovaara*, 246 F.3d at 293 (applying a forum-selection clause to claims of insider trading and fraud); *Crescent Int'l, Inc. v. Avatar Cmty., Inc.*, 857 F.2d 943, 944-45 (3d Cir. 1988) (applying a forum-selection clause to claims of RICO violations, fraud, unfair competition, and tortious interference); *Person*, 456 F. Supp. 2d at 491 (applying a forum-selection clause to antitrust claims); *Varsity Gold, Inc. v. Lunenfeld*, 2008 WL 5243517, at *3 (D. Md. Dec. 12, 2008) ("[T]he language of

---

[7] In fact, even narrower forum-selection clauses—such as those limited only to claims "arising out of" the contract—would cover the claims in Parts Geek's Complaint. Courts enforce such forum-selection clauses where, as here, the allegations in the Complaint implicate the contract's terms. *See, e.g., Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988) (holding that a narrow forum-selection clause that applies only to "litigation upon any of [the contract's] terms" covers RICO, misrepresentation, unfair competition, conversion, fraud, and tortious-interference claims where such claims "implicate the terms of the agreement"); *Person v. Google Inc.*, 456 F. Supp. 2d 488 (S.D.N.Y. 2006) (holding that a former version of the forum-selection clause in a Google AdWords contract, which applied narrowly to disputes "arising out of" the contract, covered antitrust claims for alleged monopolization of the keyword-targeted-online-advertising market).

the forum selection clause here is broad enough to encompass more than pure contract claims, and courts . . . have consistently found facially contractual forum selection clauses to apply to related tort claims.").

Further, a litigant cannot escape the grasp of a forum-selection clause by pleading, as Parts Geek has done here, only non-contractual claims. *See Crescent*, 857 F.2d at 944-45 (applying a forum-selection clause to a complaint that pled only tort claims, and noting that, if it did not do so, a litigant could avoid "a forum selection clause by simply pleading non-contractual claims"); *Coastal Steel Corp v. Tilghman Wheelabarator, Ltd*, 709 F.2d 190, 203 (3d Cir. 1983) ("[W]here the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of [a forum-selection clause]."), *overruled in part on unrelated grounds by Laura Lines v. Chasser*, 490 U.S. 495 (1989), *as stated in Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith*, 885 F.2d 1149, 1161 n.22 (3d Cir. 1989). Because Parts Geek's claims are related to Google's advertising programs, they fall under the forum-selection clause, whether or not couched in the language of contract.

Finally, to the extent that the Court determines some of the claims in the Complaint are not subject to the forum-selection clause, the Court should nevertheless enforce the clause as to all of the claims in the interests of judicial efficiency to have all related claims tried before the same forum. *See Bennett*, 2008 WL 4951020, at *3.

### 3.   The forum-selection clause is presumptively valid and should be enforced.

Because forum selection clauses are presumptively valid, the party objecting to enforcement of the clause bears the "heavy burden . . . of proving that enforcement would be unreasonable or unjust" under the circumstances. *In re Diaz Contracting, Inc.*, 817 F.2d 1047, 1052 (3d Cir. 1987) (citation omitted). To overcome the presumption of validity, the party objecting to the contractual forum must show: "(1) the clause was invalid for such reasons as fraud or overreaching, or (2) the enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought, or (3) that enforcement of the clause would be so gravely difficult and inconvenient as to be unreasonable and unjust and that it would deprive the party of its day in court." *Intermetals Corp. v. Hanover Int'l Aktiengesellschaft Fur Industrieversicherungen*, 188 F. Supp. 2d 454, 458 (D.N.J. 2001) (Cooper, J.).

Parts Geek cannot carry its heavy burden on any of these prongs.

### a.   The forum-selection clause is not the product of fraud or overreaching.

Parts Geek cannot show that the forum-selection clause is invalid as a result of fraud or overreaching. As for fraud, "the mere allegation of fraudulent conduct does not suspend operation of a forum selection clause. Rather, the proper inquiry is whether the forum selection clause is the result of 'fraud in the inducement of the [forum-selection] clause itself.'" *MoneyGram Payment Systems, Inc. v. Consorcio Oriental, S.A.*, 65 Fed. App'x. 844, 847 (3d Cir. May 21, 2003) (citing

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)).

Parts Geek cannot make this showing because it knowingly and voluntarily entered

the Contract, with no fraud on the part of Google.

Nor can Parts Geek show that the clause was the product of overreaching.

The typical case for invalidating a forum-selection clause for overreaching occurs

when unsophisticated consumers enter into contracts of adhesion with powerful

corporations.  *See Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d

352, 360 (3d Cir. 1986).  Frequently, the clause is written in fine print and in

complicated language inaccessible to an unsophisticated customer.  *See BABN*

*Techs. Corp. v. Bruno*, 25 F. Supp. 2d 593, 595-96 (E.D. Pa. 1998).

Parts Geek is far from an unsophisticated consumer.  Parts Geek touts itself

as a "well known seller of auto parts in the United States" and its products as

"widely advertised, extensively offered, and sold . . . throughout the United States

and worldwide."  Compl. ¶¶ 1, 28.  Courts consistently uphold the validity of

forum-selection clauses entered into by two sophisticated businesses such as Parts

Geek and Google.  *See Gen. Eng'g Corp.*, 783 F.2d at 360 (upholding the validity

of a forum-selection clause where "[b]oth parties . . . are sophisticated business

entities capable of understanding and adjusting for the risks associated with a

forum selection clause").

Finally, the forum-selection clause here was drafted in plain, unmistakable

English and in normal type and gave reasonable notice of its terms to Parts Geek.

*See Feldman*, 513 F. Supp. 2d at 242 (holding that Google's AdWords contract

"provided reasonable notice of its terms, had mutual assent, and was in other respects a valid express contract"). The fact that "there may not have been actual negotiations over the [forum-selection] clause does not affect its validity." *See Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1219 (3d Cir. 1991).

###           b.       Enforcement of the forum-selection clause will not violate public policy.

Courts in the Third Circuit routinely hold that the enforcement of forum-selection clauses does not violate public policy. If anything, enforcement of the clause will advance public policy by giving force and effect to the parties' agreement. *See Hodes v. S.N.C. Achille Lauro ed Altri-Gestione*, 858 F.2d 905, 915 (3d Cir. 1988) (holding that the practice of ignoring forum selection clauses "would be to revisit the 'parochialism' and 'provincialism' that the Supreme Court decried"); *Nagy v. Consol. Servs. Group, Inc.*, 2009 U.S. Dist. LEXIS 46947, at *5 (D.N.J. June 3, 2009); *Feldman*, 513 F. Supp. 2d at 247 ("[I]t would be consistent with the public policy of this forum to enforce the forum selection clause in order to give force to the parties' agreement.").

Public policy also is advanced by deferring the adjudication of this case to a California court because California law governs this case under the choice-of-law clause. *See Suhr*, 2006 U.S. Dist. LEXIS 3474 ("[I]t is appropriate to litigate the action in North Carolina, where the courts will be more familiar with the relevant state law."); *Feldman*, 513 F. Supp. 2d at 247 ("[A] California forum would be more appropriate because California law applies to disputes under the

Agreement."); *Falcone v. Mediterranean Shipping Co.*, 2002 WL 32348270 (E.D.
Pa. Apr. 3, 2002) (dismissing case based on a forum-selection clause where foreign
forum would be better at interpreting its own laws); *Hoffer v. InfoSpace.com, Inc.*,
102 F. Supp. 2d 556, 577 (D.N.J. 2000) (transferring case from New Jersey to
Washington in part because the Washington courts are in a better position to
interpret Washington law which would govern the case).

### c.   Enforcement of the forum-selection clause will not deprive Parts Geek of its day in court.

Adjudicating this case in California will not deprive Parts Geek of its ability
to litigate the case.  Even if Parts Geek claims an increased burden in litigating the
matter in California, "[m]ere inconvenience or additional expense is not the test of
unreasonableness, since it may be assumed that [Plaintiff] received under the
contract consideration for these things." *Anastasi Bros. Corp. v. St. Paul Fire &
Marine Ins. Co.*, 519 F. Supp. 862, 864 (E.D. Pa. 1981) (citing *Cent. Contracting
Co. v. Md. Cas. Co.*, 367 F.2d 341, 344 (3d Cir. 1966)).[8]  Further, courts have
repeatedly held that the financial hardships of litigating the case in another forum
will not justify voiding an otherwise valid forum-selection clause. *See Commerce
Commercial Leasing, LLC v. Jay's Fabric Ctr.*, 2004 WL 2457737 (E.D. Pa. Nov.
2, 2004) (citing *Cent. Contracting Co*, 367 F.2d at 344); *see also Ferketich v.
Carnival Cruise Lines*, 2002 WL 31371977, at *6 (E.D. Pa. Oct. 17, 2002)

---

[8] Indeed, Parts Geek and USAP are already litigating two cases against each other
in California. *See U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, CV09-04609
(C.D. Cal. June 25, 2009); U.S. Auto Parts Network, Inc. v. Parts Geek, LLC,

(holding that although plaintiff "is 75 years old and experiences difficulty in traveling, this inconvenience is not severe enough to demonstrate that litigating in Florida will 'be so manifestly and gravely inconvenient' for her that she will be deprived her day in court."); *Falcone v. Mediterranean Shipping Co.*, 2002 WL 32348270 (E.D. Pa. Apr. 3, 2002) (holding that Italy is not so inconvenient a forum as to justify invalidation of a forum-selection clause); *Drucker's, Inc. v. Pioneer Electronics (USA), Inc.*, 1993 WL 431162 (D.N.J. Oct. 20, 1993) (holding that dismissal with leave to commence action in California is not so onerous as to justify invalidating forum-selection clause). Indeed, a claim of undue burden or financial hardship by Parts Geek would ring particularly hollow because Parts Geek sells auto parts throughout the United States—including California—and maintains one of its two main warehouses in California.[9]

Finally, California is a reasonable forum for litigating Parts Geek's claims. The parties did not select a California forum and California law haphazardly. Google has its headquarters in California. Google offers the contract for advertising services from those headquarters and provides the contracted advertising services from its headquarters. Google's alleged wrongful acts—unauthorized use of the Parts Geek trademark—occurred in its headquarters. Moreover, co-defendant USAP is also located in California. Compl. ¶ 10. The

---

CV09-09231 (C.D. Cal. Dec. 16, 2009).

[9] Parts Geek, Frequently Asked Questions,
http://www.partsgeek.com/aboutus.html.

majority of the relevant documents and witnesses therefore will be located in California. *See Feldman*, 513 F. Supp. 2d at 247 ("[T]he alleged wrongful acts . . . occurred in substantial part in California, where [Google] is headquartered. Thus, relevant documents and witnesses are located in California."). Further, the ability of California courts to adequately handle a case of this nature is not in question. *See id.* at 248 ("California courts have expertise in commercial litigation involving web-based technology."). Thus, California is not only a reasonable forum, but the most appropriate forum, to adjudicate this case.

Parts Geek freely and voluntarily chose to advertise with Google. It could have expended its advertising dollars somewhere else. Likewise, it could have attempted to negotiate a different forum for adjudicating disputes. But it did not. In entering into the Contract, Parts Geek accepted its benefits as well as its obligations. Because Parts Geek cannot satisfy its heavy burden of proving that the forum-selection clause should not be enforced, the Court should dismiss this action without prejudice and allow it to proceed in Santa Clara County, California.

**B.    Alternatively, the Court should transfer this action to the Northern District of California under 28 U.S.C. § 1404(a).**

If the Court does not dismiss the Complaint for improper venue, it should transfer this action to the Northern District of California under 28 U.S.C. § 1404(a). In considering a § 1404(a) motion, the court balances various private and public factors. *See Jumara*, 55 F.3d at 879. The private factors include: (1) the parties' forum preferences; (2) whether the claim arose elsewhere; (3) the

convenience of the parties; and (4) the convenience of the witnesses and the location of the books and records to the extent they may be unavailable in one forum. *Id.* The public factors include: (1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) local interest in deciding a local controversy; (4) public policies of the fora; and (5) familiarity of the district court with applicable state law. *Id.* In balancing these factors, a forum-selection clause is entitled to "substantial consideration" because it represents the parties' agreement as to the most proper forum. *See id.*

The private factors favor transferring the action to the Northern District of California. First, the parties' initial choice of forum, as evidenced by the forum-selection clause, is the Northern District of California. Parts Geek's choice of this forum to file this suit therefore should receive no weight. *See id.* at 880 ("[W]hile courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue."). Second, the claims in this case arise from the alleged unauthorized use of the Parts Geek mark as part of Google's AdWords program, which is operated from Google's headquarters in California. Third, the convenience of the parties favors transfer because Google is headquartered in California, Parts Geek maintains one of its two main warehouses in California, and USAP located in California. Further, having contractually consented to a forum in California, Parts Geek "bear[s] the risks of [any] inconvenience" resulting therefrom. *See Suhre*, 2006 U.S. Dist. LEXIS 3474, at *7. Fourth, Google's

"alleged wrongful acts . . . occurred in substantial part in California, where [Google] is headquartered.  Thus, relevant documents and witnesses are located in California."  *See Feldman*, 513 F. Supp. 2d at 247.

The public factors also favor transfer to the Northern District of California. First, any judgment entered would be enforceable in California.  Second, practical considerations favor transfer because, as noted above, the majority of the witnesses and evidence will be located in California.  Third, because the wrongful acts alleged in this case occurred substantially in California, that state has a strong interest in deciding this matter.  *See Suhre*, 2006 U.S. Dist. LEXIS 3474, at *5-*6. Further, California courts can adequately handle a case of this nature.  *See Feldman*, 513 F. Supp. 2d at 248 ("California courts have expertise in commercial litigation involving web-based technology.").  Fourth, and as noted above, public policy is best served by enforcing the forum-selection clause because it protects the reasonable expectations of the contracting parties.  Fifth, because California law governs this action under the choice-of-law clause in the Contract, California courts will be more familiar with applicable state law.  *See Suhre*, 2006 U.S. Dist. LEXIS 3474, at *5-*6; *Feldman*, 513 F. Supp. 2d at 247.

Accordingly, based on the "substantial consideration" given to the forum-selection clause, as well as the private and public factors favoring transfer, this action should be transferred to the Northern District of California under § 1404(a).

**C.**    **If the Court does not dismiss or transfer this action for improper venue, it should dismiss Counts I-III and V-VII for lack of standing.**

Parts Geek, a mere licensee of the Parts Geek trademark, lacks standing to sue for its infringement or dilution.  The Court therefore should dismiss Count I (Trademark Infringement under the Lanham Act), Count II (Contributory Trademark Infringement under the Lanham Act), Count III (Vicarious Trademark Infringement under the Lanham Act), Count V (Trademark Dilution under the Lanham Act), Count VI (Trademark Infringement under New Jersey Law), and Count VII (Unfair Trade Practice under NJSA § 56:8-2).

A plaintiff has the burden of establishing that it has standing to file suit.  *See Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Factual allegations to establish standing must be present on the "face of the complaint."  *See In re President's Comm'n on Organized Crime Subpoena of Scarfo*, 783 F.2d 370, 373 (3d Cir. 1986) (citation omitted).  The lack of standing is a jurisdictional defect that requires dismissal of the case.  *See Warth*, 422 U.S. at 498-99.

In its Complaint, Parts Geek alleges that Import Specialists of America, Inc. ("Import Specialists") registered the Parts Geek trademark and assigned the trademark to Web Geek, LLC ("Web Geek").  *See* Compl. ¶¶ 29-30.  Parts Geek alleges that Web Geek then "licensed" the trademark to Parts Geek.  *Id.* ¶ 30.  The Complaint is devoid of any further allegations about the extent or scope of the license.

1.  **Because Parts Geek is at best a mere licensee of the trademark, it lacks standing to sue for trademark infringement under the Lanham Act (Counts I-III).**

Under the Lanham Act, only a trademark registrant or its "legal representatives, predecessors, successors and assigns" have standing to sue for infringement.  15 U.S.C. § 1127.  Although the Complaint alleges that Import Specialists assigned the Parts Geek mark to Web Geek, the assignment attached to the Complaint names Christopher Grosso as the assignor, not Import Specialists.  *See Compl.,* Exh. B.  The Complaint lacks any allegations explaining whether or how Christopher Grosso came to own the Parts Geek mark.  Because Parts Geek's claimed right to the mark is derivative of Web Geek's alleged ownership, this defect in the chain of title requires dismissal of Counts I through III, for direct, contributory and vicarious trademark infringement.

Moreover, Parts Geek does not allege that it is the registrant of the Parts Geek mark or within any of the other categories of those with standing to sue.  Instead, the Complaint alleges only that Parts Geek is the licensee of the Parts Geek trademark.  A mere licensee of a trademark lacks standing to sue for infringement.[10]  To establish standing as a licensee, Parts Geek must show that its

---

[10] In contrast, standing to sue for false representation under § 43(a) of the Lanham Act (Count IV in the Complaint) extends to mere licensees.  *Mercedes-Benz USA, LLC v. ATX Group, Inc.*, 2009 WL 2255727, at *9 (D.N.J. July 27, 2009) ("Courts have found that § 1125(a)(1)(A)'s permissive rule that 'any person who believes that he or she is or is likely to be damaged by such act' may sue permits claims by non-exclusive licensees."); *Nat'l Licensing Ass'n., LLC v. Inland Joseph Fruit Co.*, 361 F. Supp. 2d 1244, 1256 (E.D. Wash. 2004) ("Unlike § 32(1), which grants a right of action solely to the registrant of a trademark, § 43(a) permits 'any person

license is exclusive and that the licensor did not retain any exclusive ownership rights. *See* Gilson on Trademarks, § 11.02[1][b] ("Where the license is nonexclusive, or other factors indicate that the licensor retains exclusive ownership rights, the courts ordinarily hold that the trademark owner is an indispensable party and that the licensee has no standing to bring an infringement action by itself."); *Ass'n of Coop. Members, Inc. v. Farmland Indus., Inc.*, 684 F.2d 1134, 1143 (5th Cir. 1982) ("The licensor of a trademark is usually treated as a necessary or indispensable party in an infringement action by its licensee.");[11] *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154, 159 (1st Cir. 1977) ("There appear to be no cases where a nonexclusive licensee has been permitted to maintain a trademark infringement suit in the absence of the 'registrant.'"); *Upper Deck Authenticated, Ltd. v. CPG Direct*, 971 F. Supp. 1337, 1347 (S.D. Cal. 1997) ("To have standing to bring an infringement claim under the Lanham Act, [Plaintiff] must be the 'exclusive licensee' of the . . . marks.").[12]

---

who believes that he or she is likely to be damaged' by the proscribed conduct to bring a civil action.").

[11] The Fifth Circuit explained the reason for this rule as follows: "As owner of the mark, the licensor has a legally protected interest in the subject matter of the action. A judgment for the alleged infringer, whether based on a finding that the licensed mark is not a valid trademark or that the defendant's mark does not infringe it, may prejudice the licensor's rights in his own mark. A judgment for the plaintiff-licensee could result in double obligations for the defendant, should the licensor subsequently sue on his own." *Ass'n of Coop. Members*, 684 F.2d at 1143 (internal citations omitted).

[12] In fact, some courts require more than exclusivity for a trademark licensee to establish standing to sue for infringement. *See Nat'l Licensing Ass'n*, 361 F. Supp. 2d at 1254 ("Where a licensing agreement does not grant the licensee a property

Parts Geek's allegations fall far short of those required to establish standing. In the Complaint, Parts Geek alleges only that it was licensed the Parts Geek mark. But nowhere in its Complaint does Parts Geek allege that it is the exclusive licensee of the Parts Geek mark or that the licensor did not retain any exclusive ownership of the mark. Absent such allegations, Parts Geek is a mere licensee of the trademark and lacks standing to sue for its infringement.

2. **Because Parts Geek does not own the trademark, it lacks standing to sue for dilution under the Lanham Act (Count V) and for trademark infringement and unfair trade practices under New Jersey law (Counts VI-VII).**

To establish standing for its trademark-dilution claim under the Lanham Act (Count V), Parts Geek must establish that it owns the trademark at issue. A mere licensee, even if exclusive, lacks standing to sue for dilution. *See* 15 U.S.C. § 1125(c)(1) (stating that "the **owner** of a famous mark that is distinctive" may sue for dilution (emphasis added)); *ICEE Distrib., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 599 (5th Cir. 2003) ("Because [Plaintiff] is not the owner of the marks, but merely an exclusive licensee, it has no standing to sue under the Dilution Act . . . ."); *STX, Inc. v. Bauer USA, Inc.*, 1997 WL 337578, at *4 (N.D. Cal. June 5, 1997) ("[P]laintiff, as the exclusive licensee but not the owner of the marks at issue in this case, lacks standing to pursue a [dilution] claim under 15 U.S.C. § 1125(c)."); *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. B.E.*

---

interest in the mark or otherwise assign to the licensee the registrant-licensor's ownership rights, the licensee, even if exclusive, cannot enforce the mark under § 32.").

*Windows Corp.*, 937 F. Supp. 204, 209 (S.D.N.Y. 1996) ("The first requirement for a claim of dilution [under § 1125(c)] is ownership of a famous mark.").

Likewise, to establish standing for its trademark-infringement claim under New Jersey law (Count VI), Parts Geek must establish that it owns the Parts Geek trademark. *See Holiday Inns, Inc. v. Trump*, 617 F. Supp. 1443, 1464 (D.N.J. 1985) ("To establish common law service mark or trade name infringement, plaintiffs must establish that the service marks or trade names are . . . owned by plaintiffs . . . ."); *Major League Baseball Promotion Corp. v. Colour-Tex, Inc.*, 729 F. Supp. 1035, 1039-40 (D.N.J. 1990) (same); *Quabaug*, 567 F.2d at 160 ("Nor does [Plaintiff] have standing to seek relief for common law trademark infringement, since only the owner of the trademark may do so."). Parts Geek's unfair-trade-practices claim under New Jersey law (Count VII) is predicated on Defendants' alleged use and infringement of the Parts Geek trademark. *See* Compl. ¶ 138. Thus, if Parts Geek's trademark-infringement claim falls for lack of standing, so must its unfair-trade-practices claim. *See Am. Home Mortgage Corp. v. Am. Home Mortgage Corp.*, 814 A.2d 1165, 1168 & n.3 (N.J. Super. Ct. App. Div. 2003) (addressing, under the same analysis, a trademark-infringement claim and an unfair-competition claim predicated on the infringement claim).

Here, Parts Geek alleges that Web Geek owns the Parts Geek trademark and that Parts Geek is a licensee of the mark. These allegations establish that Parts Geek does not own the mark and therefore lacks standing to sue for dilution under the Lanham Act (Count V) and for trademark infringement and unfair trade

practices under New Jersey law (Counts VI-VII).

Accordingly, the Court should dismiss Counts I-III and V-VII for lack of standing.

**D.    If the Court reaches the substance of Parts Geek's claims, it should dismiss Count III (Vicarious Infringement) and Count V (Dilution) for failure to state a claim.**

      **1.    The Complaint fails to state a claim for vicarious infringement because Parts Geek has not alleged that there is an actual or apparent partnership between USAP and Google.**

Parts Geek's third count, for vicarious infringement, against Google only, must be dismissed because it fails to allege facts that support a plausible inference of vicarious liability.  To be vicariously liable for trademark infringement, one must be a joint tortfeasor.  *See Hard Rock Café Licensing Corp. v. Concession Servs., Inc.,* 955 F.2d 1143, 1150 (7th Cir. 1992).  To succeed, the plaintiff must prove that "the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Id.*; *see also Am. Telephone & Telegraph Co. v. Winback & Conserve Prog., Inc.,* 42 F.3d 1421, 1433-34 (3d Cir. 1994) (applying agency principles to determine non-contributory secondary liability in trademark-infringement case).  The Complaint alleges nothing of the sort, and thus the vicarious infringement count fails as a matter of law.

The Complaint merely alleges that Google provides ad space to its advertisers.  Parts Geek alleges that through the Google AdWords program,

advertisers can place ads that are triggered by use of specified keywords in search queries entered by search-engine users. *See* Compl. ¶¶ 56-60. Parts Geek further alleges that USAP has placed ads that use a Parts Geek mark as a keyword trigger. *See id.* ¶¶ 61-64. Nowhere, however, does Parts Geek allege that there is an actual or apparent partnership between Google and USAP (or any other advertiser who has allegedly used the Parts Geek trademark), much less that Google and any such advertiser can "bind one another in transactions with third parties" or "exercise joint ownership or control over the infringing product." *Hard Rock Café,* 955 F.2d at 1150. The agency principles articulated by the Third Circuit in *American Telephone & Telegraph* are equally inapplicable. As the Third Circuit explained, principals are responsible for the acts of their servants, and in certain circumstances the actions of their independent contractors. 42 F.3d at 1434-35. Nowhere does the Complaint ever suggest that USAP (or any other advertiser) acted as Google's agent (whether as servant or independent contractor).

Instead, the Complaint alleges that Google has the "right and ability to control" the use of the Parts Geek mark, Compl. ¶ 99, and that Google receives a direct financial benefit from allegedly infringing uses of Parts Geek's mark, *id.* ¶ 102. This is the standard applicable to vicarious *copyright* infringement, not vicarious trademark infringement. *Hard Rock Café,* 955 F.2d at 1150. Citing the "fundamental differences" between copyright and trademark law, the Supreme Court has held that secondary liability for trademark infringement must be more narrowly drawn than for copyright infringement. *Sony Corp. of Am. v. Universal*

*City Studios, Inc.,* 464 U.S. 417, 439 n.19 (1984); *see also Hard Rock Café,* 955

F.2d at 1150 (declining to apply copyright standard for vicarious liability in the

trademark context).

As the Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* the

factual allegations in a Complaint "must be enough to raise a right to relief above

the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

Given that "a formulaic recitation of the elements of a cause of action will not do,"

*id.,* Parts Geek's failure even to recite the correct standard necessarily dooms its

vicarious-infringement claim.

### 2.    Parts Geek has not adequately alleged non-niche fame and thus its dilution claim (Count V) must be dismissed.

In order to establish dilution under the Lanham Act, the plaintiff must have a

famous mark—that is, one that is "widely recognized by the *general consuming*

*public of the United States.*" 15 U.S.C. § 1125(c)(2)(A) (emphasis added).  This

requirement reflects Congress's 2006 amendments to the dilution statute,

Trademark Dilution Revision Act of 2006 ("TDRA"), Pub. L. 109-312, 120 Stat.

1730 (2006), which "eliminated any possibility of 'niche fame.'" *Top Tobacco,*

*L.P. v. N. Atlantic Operating Co., Inc.,* 509 F.3d 380, 383-84 (7th Cir. 2007)

(rejecting dilution claim based on fame in the loose-cigarette-tobacco market);

*Componentone, L.L.C. v. Componentart, Inc.,* No. 02:05cv1122, 2007 WL

4302108, at *1-*2 (W.D. Pa. Dec. 6, 2007) (holding that after the TDRA, fame

within a specific segment of the computer information-technology industry is

insufficient to support a dilution claim).[13]

To allege fame, Parts Geek mostly relies on generic allegations. Parts Geek alleges that it has spent "substantial amounts" advertising its mark "in a broad cross-section of media." Compl. ¶ 119.A. It has allegedly received "massive publicity" from "third parties." *Id.* ¶ 119.B. It has earned "tens of millions" of dollars in revenue. *Id.* ¶ 119.C. The Parts Geek mark is federally registered. *Id.* ¶ 119.E. Nothing in these allegations offers any basis for inferring that the mark is widely recognized by the general consuming public, as opposed to the auto parts consuming public. *See Twombly,* 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Indeed, elsewhere in the Complaint, Parts Geek merely alleges (on information and belief, no less) that its mark has attained "some of the highest levels of brand recognition *among auto parts consumers.*" Compl. ¶ 36 (emphasis added). Even if that bare conclusion were accepted as true—which is not allowed under *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009)—that is mere niche fame. *See id.* at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Because Parts Geek has failed even conclusorily to allege non-niche fame, the dilution count must be dismissed.

---

[13] While the Third Circuit has previously concluded that niche fame could support a dilution claim, *Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.,* 212 F.3d 157, 163-64 (3d Cir. 2000), the court there was construing the pre-TDRA statute. Given that the TDRA has "eliminated any possibility of 'niche fame,'" *Top Tobacco,* 509 F.3d at 383-84, *Times Mirror* is no longer good law, as the *Componentone* court recognized.

## IV.   CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court grant its motion and dismiss the Complaint for improper venue.  In the alternative, Google requests that the Court transfer this action to the Northern District of California under 28 U.S.C. § 1404(a).  If the Court does not dismiss or transfer this matter for improper venue, it should dismiss Counts I-III and V-VII for lack of standing.  Finally, if the Court reaches the substance of Parts Geek's claims, it should dismiss Count III (Vicarious Infringement) and Count V (Dilution) for failure to state claims upon which relief may be granted.

Dated:  January 22, 2010

HANGLEY ARONCHICK SEGAL & PUDLIN

By:/s/ Michele D. Hangley
Michele D. Hangley (MH0373)
Dylan J. Steinberg (DS7855)
20 Brace Road, Suite 201
Cherry Hill, NJ 08034
(856) 616-2100

Of Counsel:

DAVID J. SILBERT
MICHAEL KWUN
OZAN O. VAROL
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA  94111
(415) 391-5400

Attorneys for Defendant
GOOGLE INC.