# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

PARTS GEEK, LLC       : CIVIL ACTION NO. 3:09-cv-05578-MLC-LHG

       Plaintiff        :

         v.        :    **PLAINTIFF PARTS GEEK'S BRIEF**

       :    **IN OPPOSITION TO DEFENDANT**

U.S. AUTO PARTS NETWORK, INC.,      :    **GOOGLE INC.'S MOTION TO**

et al.,        :    **DISMISS, OR, IN THE ALTERNATIVE,**

       :    **TO TRANSFER**

       Defendants        :

       :

       :    **MOTION DATE**

       :    **FEBRUARY 16, 2010**

       :

       :

       :

WEIR & PARTNERS LLP
By:     Steven E. Angstreich
        Carolyn C. Lindheim
        Melissa LeBon
10 Melrose Avenue
Suite 450
Cherry Hill, NJ 08003
856-740-1490
Attorneys for Plaintiff
sangstreich@weirpartners.com
clindheim@weirpartners.com
mlebon@weirpartners.com

# TABLE OF CONTENTS

**Page**

Table of Contents..............................................................................................i

Table of Citations.............................................................................................iii


I.     Introduction.............................................................................................1

II.    Argument .................................................................................................1

       A.     Dismissal Is Improper As Plaintiff Sued In The Correct Forum. ...............1

              1.     The Forum-Selection Clause Is Not Application To The ...............2
                     Being Brought by Parts Geek.

                     a.     The Claims Have No Connection To The...........................2
                            Advertising Contract.

                     b.     The Claims Are Not Encompassed By The  .......................3
                            Wording Of The Contract.

              2.     The Claim For Negligence Should Not Be Dismissed Or ..............5
                     Transferred.

       B.     The Court Should Not Transfer This Action. .............................................6

       C.     Parts Geek Has Standing To Assert Claims For Trademark.......................9
              Infringement And Dilution Under The Lanham Act And
              Related State Laws.

              1.     Parts Geek Has Standing To Pursue Its Trademark......................10
                     Infringement Claims Under Section 32(1) Of The
                     Lanham Act, 15 U.S.C. § 1114(1) (Counts I, II, and
                     III) Insomuch As It Has Alleged Facts Sufficient To
                     Establish That It Is A "Registrant" Within The Meaning
                     Of 15 U.S.C. § 1127 And Relevant Case Law.

2.    Parts Geek Has Standing To Pursue Its Trademark......................15
      Dilution Claims Under Section 43(c) Of The Lanham
      Act, 15 U.S.C. § 1125(c) (Count V) Insomuch
      As It Has Alleged Facts Sufficient To Establish
      That It Is An "Owner" Of The Parts Geek" Trademark.

3.    Parts Geek Has Standing To Pursue Its Trademark......................17
      Infringement Claim (Count VI) and Unfair Trade
      Practices Claim (Count VII) Under New Jersey
      State Law Insomuch As It Has Alleged Facts
      Sufficient To Establish That It Is An "Owner" Of
      The Subject Trademark.

D.    Plaintiff's Count III (Vicarious Infringement) And Count........................19
      V (Dilution) Set Forth Legally Cognizable Causes Of Action
      That Adequately Put The Defendants On Notice Of The
      Essential Elements Of The Claims.

1.    Count III Sets Forth A Legally Cognizable Claim For.................20
      Vicarious Infringement Against Google.

2.    Count V Sets Forth A Legally Cognizable Claim For..................22
      Dilution Against USAP And Google.

III.  Conclusion ............................................................................................26

# TABLE OF CITATIONS

Page

**Cases**

*Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp.* ..................................11
350 F.Supp. 1341 (E.D. Pa. 1972), aff'd. 480 F.2d 917 (3d Cir. 1973)

*Arma v. Buyseasons, Inc.*, 591 F.Supp.2d 637.................................................................3

*Armco, Inc. v. N. Atlantic Ins. Co., Ltd.* ..........................................................................4
68 F.Supp.2d 330 9S.D.N.Y. 1999)

*Bankers Trust Co. v. Worldwide Transp. Services, Inc.* ....................................................6
537 F.Supp. 1101 (D.C. Ark. 1982)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................19

*Berrett v. Life Ins. Co. of the Southwest* ..........................................................................6
623 F.Supp. 946 (D.C. Utah 1985)

*Cheever v. Acad. Chi. Ltd.* .............................................................................................3
690 F.Supp. 281 (S.D.N.Y. 1988)

*Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.* ...........................................18
992 F.Supp. 709 (D.N.J. 1998)

*Conley v. Gibson*, 355 U.S. 41 (1957) .............................................................................19

*Corcovado Music Corp. v. Hollis Music, Inc.* ..................................................................3
981 F.2d 679  (2d Cir. 1993)

*David Berg & Co. v. Gatto Int'l Trading Co.* ..................................................................20
884 F.2d 306 (7th Cir. 1989)

*Dunn & Fenley, LLC v. Diederich*, 2010 WL 28662 (D.Or. 2010)....................................5

*800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F.Supp.2d 273 (D.N.J. 2006) .......................18

*Ferrero U.S.A., Inc. v. Ozak Trading, Inc.* ..........................................................11,12,14
753 F.Supp. 1240, (D.N.J. 1991), aff'd. 935 F.2d 1281 (3d Cir. 1991)

*G.H. Mumm Champagne v. Eastern Wine Corp.* .........................................................................11
142 F.2d 499 (2d Cir. 1944), cert. denied 323 U.S. 715, 65 S.Ct. 41
89 L.Ed. 575(1944)

*General Development Corp. v. Binstein*, 743 F.Supp. 1115 (D.N.J. 1990) ......................18

*Green v. Fornario*, 486 F.3d 100 (3d Cir. 2007) ...............................................................23

*Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.* ........................................20
955 F.2d 1143 (7th Cir. 1992)

*Holiday Inns, Inc. v. Trump*, 617 F.Supp. 1443 (D.N.J. 1985) ..........................................17

*In Re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395 (3d Cir. 2000) ..............................19

*John Wyeth & Bro. Ltd. v. CIGNA Intern Corp.* ...............................................................4
119 F.3d 1070 (3d. 1997)

*J & J Snack Foods, Corp. v. Earthgrains Co.* ...................................................................17
220 F.Supp.2d. 358 (D.N.J. 2002)

*Jordon v. Fox, Rothschild, O'Brien & Frankel* ................................................................20
20 F.3d 1250 (3d Cir. 1994)

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) ...........................................6,7

*Light v. Taylor*, 317 Fed.Appx. 82 (2d Cir. 2009) ............................................................5

*Nami v. Fauver*, 82 F.3d 63 (3d Cir. 1996) ......................................................................19

*Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007) ...............................................6

*Oshiver v. Levin, Fishbein, Sedram & Berman* ................................................................19
38 F.3d 1380 (3d Cir. 1984)

*Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154 (1st Cir. 1977) ........................11

*Ransom v. Marrazzo*, 848 F.2d 398 (3d Cir. 1988) ..........................................................19

*Saint-Gobain Calmar, Inc. v. National Products Corp.* ....................................................6
230 F.Supp.2d 655 (E.D. Pa. 2002)

*Schiaffo v. Helstoski*, 492 F.2d 413 (3d Cir. 1974) ...........................................................9

*Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970) ..................................................7

*Smith v. Lucent Technologies, Inc.*, 2004 WL 515769 .......................................................4
(E.D.La. 2004)

*Ultrapure Sys., Inc. v. HAM-LET Group*, 921 F.Supp. 659 (N.D. Cal. 1996)..................11

*Warth v. Seldin*, 422 U.S. 490 (1975) .......................................................................9,14,15

**Rules**

Fed.R.Civ.P. 8(a)(2) ...................................................................................................19,20

Fed. R.Civ.P. 12(b)(6)....................................................................................................19

**Statutes**

15 U.S.C. § 1114..............................................................................................................11

15 U.S.C. § 1114(1).........................................................................................................10

15 U.S.C. § 1114(1)(a)-(b)..............................................................................................10

15 U.S.C. § 1125(a) .........................................................................................................10

15 U.S.C. § 1125(c) ..............................................................................................15,23,24,25

15 U.S.C. § 1125(c)(1)................................................................................................15,23

15 U.S.C. § 1125(c)(2)(A) ..............................................................................................23

15 U.S. C. § 1125(c)(2)(A)(i)-(iv) .................................................................................24

15 U.S.C. § 1127..........................................................................................................10,11

28 U.S.C. § 1404(a) ......................................................................................................7,8

28 U.S.C. § 1406 ..............................................................................................................7

N.J.S.A. 56:8-2..............................................................................................................9,18

**Authorities**

49 N.J. Prac., Business Law Deskbook § 12:37. ............................................................16
Trademark dilution-Defining trademark dilution (2009-2010 Ed.)

I.  **INTRODUCTION**

Pending before the Court is Defendant Google's Motion to Dismiss or in the alternative to transfer this action to the Northern District of California or if dismissal and/or transfer is not granted to dismiss Plaintiff's Lanham Act or New Jersey law claims.  Google's Motion to dismiss or transfer is predicated upon the forum selection clause in the advertising contract between Plaintiff and Google.  Google's motion to dismiss Counts I-III and V-VII is predicated upon the contention that Plaintiff as a licensee of the Parts Geek trademark, it lacks standing to assert those claims.  For the reasons that follow, Google's Motion should be denied.

II.  **ARGUMENT**

A.  **Dismissal Is Improper As Plaintiff Sued In The Correct Forum.**

Contrary to the assertion of Defendant Google, the District of New Jersey is a proper forum for this action.  While it is correct that Parts Geek and Google have entered into an advertising contract ("advertising contract" or "Contract"), the forum-selection clause is not applicable to Plaintiff's claims for Trademark Infringement, Trademark Dilution and Unfair Trade Practices (hereinafter all known as the "Claims")[1] asserted in the Complaint. The only claim advanced in the Complaint that implicates, in any way, the Contract is Count VIII, for negligence.  Thus, but for Count VIII (of this ten Count Complaint), the Contract between Plaintiff and Google has no relevance to the allegations of any of the claims asserted in this action.  As a result, the forum-selection clause is neither mandatory and exclusive nor applicable

---

[1] This reference does not include all the claims in the Complaint.  Although Count IV is brought under the Lanham Act, Google's Motion does not seek dismissal of that Count in sections C or D of its Motion.  Further, the Motion does not address Counts IX (RICO) or X (Computer Fraud).  The forum selection clause is inapplicable to these Counts.  Plaintiff's negligence claim (Count VIII) is also not included.

1

to the Plaintiff's claims.  Those claims exist independent of the Contract.  But, if this Court determines that Count VII mandates that this entire action be dismissed or transferred to the Northern District of California, then the Court should dismiss Count VIII or allow Plaintiff to voluntarily dismiss it so that this action can proceed in Plaintiff's choice of forum.

      **1.**      **The Forum-Selection Clause Is Not Applicable To The Claims Being Brought By Parts Geek.**

The Claims and those asserted in Counts IV, IX and X arise from federal and state law- the Lanham Act, the Federal Computer Fraud and Abuse Act, RICO, New Jersey Consumer Fraud Act and trademark infringement under New Jersey law.  For those statutes and common law claims to exist, there is no need for Plaintiff and Google to have had any contractual relationship.  Therefore, the forum-selection clause does not apply.  However, if the Contract were found applicable, the language of the forum-selection clause is limited in its scope by the language of the Contract as a whole.

      **a.**      **The Claims Have No Connection To The Advertising Contract.**

The Claims[2] have no relationship to the advertising contract as the resolution of these Claims does not relate to the interpretation of the Contract, are not dependent upon the existence of a contractual relationship between the parties, and the rights being asserted do not originate from or arise out of the Contract. The Claims alleged in the Complaint do not dispute the existence of the Contract between Parts Geek and Google or how to interpret the Contract, which might then cause the forum-section clause to validly apply. In fact, these Claims have absolutely no connection to anything in the Contract and exist independent of whether Parts Geek

---

[2] This applies equally to Counts IV, IX and X.

2

participated in Google's Advertising Program.  The Claims arise out of the conduct of USAP as permitted or as participated in by Google.

Moreover, Parts Geek's Claims based on federal and state trademark law, do not require a contractual relationship and none is based on that relationship. The only requirement for Plaintiff to advance its Claims is the existence of a valid trademark infringement and there is no dispute that such trademark exists here. Plaintiff's right to protect its trademark or the existence of it does not arise from its Contract with Google.  Rather, they arise from a federal statute and state law. Therefore, a forum-selection clause in a contract that has absolutely no connection to the Claims Plaintiff asserts is neither mandatory and exclusive nor applicable to Plaintiff's choice of forum. *See Corcovado Music Corp. v. Hollis Music, Inc.,* 981 F.2d 679, 682 (2d Cir.1993) ("The *Cheever* case illustrates that where a plaintiff sues for copyright infringement and asserts no rights under a contract with the defendant containing a forum-selection clause, the forum-selection clause has no effect."), *citing Cheever v. Acad. Chi. Ltd.,* 690 F.Supp. 281, 285 (S.D.N.Y.1988); *Arma v. Buyseasons, Inc.*, 591 F.Supp.2d 637( holding the forum selection clause in distribution agreement between a commercial photographer and costume designer and corporate internet costume retailers did not apply to the federal copyright, trademark, and state unfair competition claims against retailer's principal, since the designer's rights in marks at issue did not arise from the agreement.") Based upon *Cheever* and *Arma*, Google's Motion should be denied.

  **b.**  **The Claims Are Not Encompassed By The Wording Of The Contract.**

Assuming arguendo that the Contract were found to apply, that is not the end of that analysis as to whether the forum-selection clause applies to the Claims. To determine whether

the forum-selection clause applies, interpretation starts with actually interpreting the words of the clause and the surrounding contract. *See John Wyeth & Bro. Ltd. v. CIGNA Intern Corp.,* 119 F.3d 1070, 1075 (3d. 1997) (highlighting the language-specific nature of a forum-selection clause applicability inquiry and discounting the precedential weight of cases that deal with dissimilarly worded clauses). The Contract specifies that the terms within "govern **Customer's participation** in "Google's Advertising Program." (First paragraph of the Joseph Decl., Exh. 1) (emphasis added). Based thereon, the forum-selection clause only applies when the dispute involves the specific Customer's Participation in the Program. Therefore, the forum-selection clause is not applicable where Plaintiff's Claims arise out of the conduct of a different customer (USAP) which conduct Google condones and not from Plaintiff's own participation in the advertising program.  Google's attempt to expand the reach of the forum-selection clause to any and every dispute between Google and a customer is without foundation.

This forum-selection clause states that it applies to "claims *arising out of* or *relating to* this *agreement* or the Google program(s)…." While the terms "arising out of" and "relating to" have been found by various courts "to be considerably broad forum clause phrases, these terms are not without bounds." *Smith v. Lucent Technologies, Inc.,* 2004 WL 515769, *9 (E.D.La.2004); *see also Armco, Inc. v. N. Atlantic Ins. Co., Ltd.,* 68 F.Supp.2d 330, 338-339 (S.D.N.Y.1999) (holding that a cause of action for breach of fiduciary duty is not governed by a forum selection clause even though the clause in question included the language "aris[ing] out of or in connection with"). Google seeks to use this extremely broad definition to prevent Parts Geek (and for that matter any other advertising customer) from bringing any lawsuit against Google regardless of the nature of the claim simply because there is a contractual relationship between them. This overly broad application advanced by Google is not borne out by a fair

4

reading of the Contract.

The Claims **arise under** the Lanham Act or New Jersey state law, **not** the Contract nor Parts Geek's own participation in "Google's Advertising Program". Moreover, these wrongful acts are **related to** Google's contractual relationship with USAP, **not** Parts Geek's. *See Light v. Taylor,* 317 Fed.Appx. 82, 83-84 (2d Cir. 2009) (finding copyright claims not to be governed by the forum selection clause because they did not encompass a dispute with respect to the agreement at issue since the relevant clause only applied to disputes "regarding" the agreement and a copyright claim was separate). Here, the claims being brought do not "arise out of" or "relate to" the Agreement or Parts Geek's direct participation in Google's Advertising Program and are completely separate.  Consequently, there is no reason to dismiss these Claims and Google's Motion should be denied.

### 2.      The Claim For Negligence Should Not Be Dismissed Or Transferred.

Google is trying to make a forum selection argument for ten claims based on one small reference to the advertising contract that Google has with Parts Geek in Parts Geek's negligence claim. When the majority of claims have no relationship to the forum selection clause a Plaintiff's right to choose a forum should not be taken away. As explained in *Dunn & Fenley, LLC v. Diederich*, 2010 WL 28662, *6 (D.Or.2010), allowing "the relatively small contract claim to decide where the much larger copyright infringement claims will be litigated will thwart Congress's intent in enacting venue limitations." Moreover, it is in the best interest of all parties to have the Court try all claims together.

However, if the Court does determine that this claim should be governed by the forum-selection clause and should be transferred to California, the Court should simply dismiss the claim.  Courts have the power to dismiss or transfer claims and retain jurisdiction over others.

*See Bankers Trust Co. v. Worldwide Transp. Services, Inc.*, 537 F.Supp. 1101(D.C.Ark. 1982) (dismissing two counts of a cross claim because of a forum-selection clause, but retained ancillary jurisdiction over another); *Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir 2007) (finding that separate treatment of separate claims is appropriate where some but not all claims are subject to the clause and that there is a twin commitment "to upholding forum selection clauses where these are found to apply and deferring to a plaintiff's proper choice of forum constrain"); *Berrett v. Life Ins. Co. of the Southwest*, 623 F.Supp. 946 (D.C.Utah 1985) (finding a forum selection clause of insurance agency agreement was enforceable and applicable to contract and quantum meruit claims but was not applicable to tort claims for intentional interference with business relations, wrongful inducement to breach, and defamation).

In this case Plaintiff is not trying to avoid a forum-selection clause; it is trying to have its proper choice of forum for a majority of its Claims. If the court finds it necessary to keep all claims together and that the forum-selection clause applies then Plaintiff is willing to dismiss this one claim.

**B.     The Court Should Not Transfer This Action.**

In deciding a motion to transfer venue, a court must first determine whether an alternative forum is a proper venue and then whether balance of convenience clearly weighs in favor of transfer. *Saint-Gobain Calmar, Inc. v. National Products Corp.*, 230 F.Supp.2d 655 (E.D.Pa.2002). The burden of showing that the court should grant a transfer rests on the defendant. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Google bases its argument for a transfer on the forum-selection clause it has in its contract with Parts Geek, but this forum-selection clause is not applicable to Plaintiff's Claims, so Google has not met its burden.

The District Court of New Jersey is a proper forum.[3]  Not only is New Jersey a proper forum it is also the most appropriate forum as is shown by the analysis of private and public factors under 28 USC §1404(a). In this balancing a plaintiff's choice of forum normally receives "paramount consideration*." Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970). Since the forum-selection clause is inapplicable to this matter, the Plaintiff should continue to receive this paramount consideration. Even if the forum-selection clause is by some chance found applicable, it is not dispositive and is only "one facet of the convenience-of-the-parties consideration" and the Plaintiff's considerations should continue to have importance. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995).

The private factors favor New Jersey. The private factors a court should consider in this analysis include: 1) the parties' preferences; 2) whether the claim arose elsewhere; 3) the convenience of the parties; 4) the convenience of the witnesses, but only to the extent that witnesses may actually be unavailable for trial in one of the fora; and 5) the location of books and records, but only to the extent that files could not be produced in the alternative forum. *Jumara,* 55 F.3d at 879. Plaintiff's preference should receive paramount consideration. However, regardless of this consideration, New Jersey is also where a substantial part of the events and actions of Defendants giving rise to claims and the actual unlawful conduct occurred. Tortious and other illegal acts were also intentionally and knowingly directed at Parts Geek in New Jersey where Defendants knew Plaintiff was located.  Moreover, all parties have availed themselves of the right to do business in New Jersey in the past and continue to do so. Google and USAP both

---

[3] This fact is undisputed by Google as is illustrative in the use of § 1404(a) versus § 1406. *See Jumara,* 55 F.3d at 879 (explaining a "transfer under § 1404( a) means that the original district was proper, but the suit could have been brought in another district.")

continue to advertise, solicit clients, and conduct continuous and systematic business in New Jersey. In addition, they engage in regular and systematically direct electronic activity in New Jersey through creating, hosting, and offering fully interactive websites, advertising, e-mail, and other internet-related services to web users within the borders and entering into contracts with residents in New Jersey. Moreover, Google is a national and international company that is used to and frequently is involved in litigation all over the world and has the resources and ability to litigate accordingly. Finally, New Jersey is where a substantial portion of the injuries occurred, where Plaintiff's web site is hosted and where relevant documents and witnesses are located. Therefore, the private factors favor this forum.  Google's transfer motion should be denied.

The public considerations also favor this forum.  The public factors a court should consider include: 1) the enforceability of the judgment; 2) practical considerations that could make the trial easy, expeditious, or inexpensive; 3) the local interest in deciding a local controversy; 4) the public policies of the fora; and 5) the familiarity of the trial judge with any applicable state law. *Id.* Any judgment entered would be enforceable in New Jersey. Also since most of the tortious activities occurred in New Jersey and valuable evidence exists here, practical considerations favor not transferring. Moreover, New Jersey has a substantial interest in protecting businesses and residents located within its borders from illegal and tortious activities therein which emanate from other jurisdictions. A New Jersey judge would also be more familiar with the New Jersey law applicable to this action, including the claims brought under New Jersey common law and New Jersey's Unfair Trade Practice Act.

Accordingly, based on the balancing of the private and public factors, and the "paramount consideration" that should be given to the Plaintiff's choice of forum, this action should not be transferred under 1404(a) and Google's Motion denied.

8

**C.      Parts Geek Has Standing To Assert Claims For Trademark Infringement And Dilution Under The Lanham Act And Related State Laws.**

Standing turns on whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  The question of standing is generally determined from an examination of the factual allegations appearing on the face of the complaint. *Schiaffo v. Helstoski*, 492 F.2d 413 (3d Cir. 1974).  For the purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the plaintiff. *Warth v. Seldin*, 422 U.S. at 501 (citation omitted).  Where the averments are not sufficient, the trial court may require the plaintiff to supply further particularized allegations of fact by amendment to the complaint or by affidavits. *Id.*  If, *after this opportunity to amend*, the plaintiff's standing does not adequately appear from all materials of record, then the complaint is properly subject to dismissal. *Id.*, 422 U.S. at 501-502.

This Court should deny Google's motion to dismiss Counts I-III, V-VII because Parts Geek has alleged sufficient facts for this Court to conclude that it is the functional owner of a federally registered trademark and service mark in "Parts Geek." (Compl. ¶¶19-24, 29-30, 76).  Nothing more is required to establish Parts Geek's right to sue for trademark infringement under the Lanham Act (Count I), contributory trademark infringement under the Lanham Act (Count II), vicarious trademark infringement under the Lanham Act (Count III), trademark dilution under the Lanham Act (Count V), trademark infringement under New Jersey Law (Count VI), and unfair trade practice under N.J.S.A. § 56:8-2 (Count VII).   As explained in further detail below, Google's motion to dismiss for lack of standing must be denied.

9

     1.     **Parts Geek Has Standing To Pursue Its Trademark Infringement Claims Under Section 32(1) Of The Lanham Act, 15 U.S.C. § 1114(1) (Counts I, II, and III) Insomuch As It Has Alleged Facts Sufficient To Establish That It Is A "Registrant" Within The Meaning Of 15 U.S.C. § 1127 And Relevant Case Law.**

In Counts I, II, and III of the Complaint, Parts Geek asserts valid claims for trademark infringement.  Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), authorizes a trademark registrant to bring a civil action against any person who, without the consent of the registrant, infringes on the registrant's trademark.  15 U.S.C. § 1114(1).  In particular, Section 32(1) provides, in relevant part:

> (1) Any person who shall, without the consent of the registrant-
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with such use is likely to cause confusion, or to cause mistake, or deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, **shall be liable in a civil action by the registrant for the remedies hereinafter provided**.

15 U.S.C. § 1114(1)(a) – (b) (emphasis added).  The term "registrant" explicitly contemplates a registrant's legal representatives, predecessors, successors, and assigns.  15 U.S.C. § 1127.

To that end, courts have consistently recognized that exclusive licensee holders fall within the definition of "registrant" for the purposes of standing.  In examining the issue of standing for a trademark infringement and unfair competition claims, courts have noted that use of the broad phraseology "any person" in the Lanham Act §§ 32(1), 43(a), 15 U.S.C. §§ 1114(1) and 1125(a), denotes an intent not to limit enforcement to merely the trademark owner. *Ferrero*

*U.S.A., Inc. v. Ozak Trading, Inc.*, 753 F.Supp. 1240, 1245 (D.N.J. 1991) *aff'd*, 935 F.2d 1281 (3d Cir. 1991) (citation omitted). Indeed, ". . . there is a long-standing history of permitting the exclusive user of a trademark to enforce a trademark on behalf of its rightful owner." *Ferrero U.S.A., Inc.*, 753 F.Supp. at 1245 (*citing G.H. Mumm Champagne v. Eastern Wine Corp.*, 142 F.2d 499, 502 (2d Cir. 1944), *cert. denied*, 323 U.S. 715, 65 S.Ct. 41, 89 L.Ed. 575 (1944); *Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp.*, 350 F.Supp. 1341, 1345 n. 2 (E.D.Pa. 1972), *aff'd*, 480 F.2d 917 (3d Cir.1973). *See also Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 159 n. 2 (1st Cir. 1977) ("15 U.S.C. § 1127 provides that the term registrant embraces the assignee thereof, and an exclusive licensee is an assignee."); *Ultrapure Sys., Inc. v. HAM-LET Group*, 921 F.Supp. 659, 666 (N.D.Cal.1996) (holding that an exclusive licensee has standing under § 1114 where the licensee, by license agreement, effectively "qualifie[d] as an assignee or successor of the registrant").

*Ferrero U.S.A., Inc.* involved a trademark infringement action wherein Ferrero U.S.A., Inc. ("Ferrero U.S.A.") was the exclusive United States distributor for TIC TAC brand breath mints. *Ferrero U.S.A., Inc.*, 753 F.Supp. at 1241. The defendant was an importer who engaged in the parallel importation of TIC TAC breath mints manufactured for distribution in the United Kingdom, which were materially different in caloric content and size from the product distributed in the United States. *Id.*

While Ferrero U.S.A. was not the registrant of the trademark, it initially was granted a shared license for distribution in the United States and Canada in 1969 from Ferrero S.p.A., its sister company and owner of the trademark. *Ferrero U.S.A., Inc.*, 753 F.Supp. at 1242. Ferrero U.S.A. enjoyed an exclusive license from approximately 1978 onward. *Id.* Ferrero U.S.A. was responsible for all aspects of marketing the product in the United States, including product

11

formulation, packaging, labeling advertising (including testing, research and strategy), promotions and pricing. *Id.* From 1980 until 1987, Ferrero U.S.A. initiated a 31 million dollar advertising campaign that was broad-based, using print and television media, as well as consumer promotions and contests to promote new image for TIC TAC, which resulted in a tremendous increase in market share. *Ferrero U.S.A., Inc.*, 753 F.Supp. at 1243. Capitalizing on this surge in market share, the defendant began United States distribution of TIC TAC's packaged for sale in the United Kingdom. *Id.* However, there were significant differences in product, leading Ferrero U.S.A. to file suit. *Id.*

> The Court held that:

> Given the factual background of this case, namely that Ferrero U.S.A. has spent substantial time and effort developing its market position, based upon trademarks owned by an affiliated corporation, Ferrero S.p.A., Ferrero U.S.A. is truly the interested party in this litigation. **To deny plaintiff standing in this matter merely because it is not the registered trademark owner would not only be contrary to the case law permitting suits to be maintained by exclusive licensee's but also would deny the reality of the actual party in interest**.

*Ferrero U.S.A., Inc.*, 753 F.Supp. at 1245 (emphasis added).

On the face of the Complaint, Parts Geek sets forth the following factual allegations with respect to its role in developing the trademark, its extensive marketing efforts, and its exclusive ownership interest in the subject trademark:

- The predecessor to Parts Geek, using the Parts Geek Mark, was founded in 1999. Since that time, the Parts Geek brand has become a leader in providing online sales of auto parts. Parts Geek's auto parts fit hundreds of vehicles and have tens of thousands of applications. Parts Geek's website provides consumers with easy access to its automobile parts for sale through its proprietary and easy to use catalogs (Compl. ¶19);

- Parts Geek, by and through its predecessor-in-interest, Import Specialists of America, Inc., began adopting and using the following trade name, service mark, logo and title Parts Geek ("the Mark"), at least as early as April of

12

1999, in connection with its high quality sales and services throughout the United States and worldwide (Compl. ¶20);

- To preserve and enhance its trademark rights, Parts Geek has obtained federal trademark registration for Parts Geek Mark (Compl. ¶21);

- Parts Geek's federally registered mark is:  "Parts Geek," registered on June 12, 2007 (Compl. ¶23);

- Parts Geek also has common law rights to the Parts Geek Mark in the State of New Jersey by virtue of the mark's eligibility for protection and Parts Geek's status as the senior user of the mark (Compl. ¶24);

- Parts Geek has invested substantial amounts in advertising and marketing in order to build the fame, reputation, and goodwill of the Parts Geek Mark. Parts Geek advertises through a variety of media (Compl. ¶26);

- Parts Geek also promotes its products and services on the Internet, via its own website and through advertising on the websites of third parties (Compl. ¶27);

- In recognition of the inherent distinctiveness and exclusive rights of use, on June 12, 2007, the United States Patent and Trademark Office granted Import Specialists of America, Inc., Registration No. 3,250,569 in connection with "retail store services in the automotive parts and supplies field."  The registration was then transferred to Web Geek, LLC and licensed to Parts Geek, LLC.  A copy of the Certificate of Registration is attached hereto as Exhibit "A" and made a part hereof (Compl. ¶29);

- Registration No. 3,250,569 and common law rights to use the Mark were assigned to Web Geek, LLC and licensed to Parts Geek by Import Specialists of America, Inc. on July 14, 2008.  A copy of the Trademark Assignment is attached hereto as Exhibit "B" and made a part hereof (Compl. ¶30);

- As a result of Parts Geek's, and its predecessor-in-interest, Import Specialists of America, Inc.'s, investment of effort, money, skill and other resources, the Mark are widely recognized as indicating Parts Geek's services, and have become well-recognized and famous in the United States and worldwide (Compl. ¶32);

- Parts Geek owns the domain name "partsgeek.com," which is used in connection with operating website located at www.partsgeek.com, and which displays the Mark throughout the United States and worldwide (Compl. ¶33);

- Parts Geek possesses valid, federally registered trademark and service mark entitled to protection under the Lanham Act (Compl. ¶76);

13

- Parts Geek has expended substantial amounts in advertising the Parts Geek Mark on a nationwide basis in a broad cross-section of prominent media for many years (Compl. ¶119(A));

- Parts Geek has earned tens of millions of dollars in revenue on a nationwide basis in connection with the products and services that it has offered under the Parts Geek Mark (Compl. ¶119(C)); and

- Parts Geek's commercial use of the Parts Geek is substantially exclusive to Parts Geek and its agents and licensees (Compl. ¶122(D)).

Much like the plaintiff in *Ferrero*, Parts Geek has alleged more than enough facts to establish that it possesses functional ownership of the trademark, or at the very least, is an exclusive licensee of the "Parts Geek" trademark.  Specifically, the Complaint demonstrates that Parts Geek has exerted a nearly exclusive control of the trademark from its inception in 1999 to the present, either through its predecessor-in-interest or via the license from Web Geek.  The Complaint demonstrates that Parts Geek's "chain of control" of the trademark for the last ten years was constant and interrupted, except for a mere four days, spanning from July 10, 2008 (i.e., the date of Import Specialist's assignment to Web Geek) to July 14, 2008 (i.e., the date of Web Geek's license agreement with Parts Geek).  (Compl. Ex. B; ¶30).  Parts Geek's substantial investment of time and money in the development and the marketing of this trademark over the last decade cements its status as the real party in interest and confers standing to sue under trademark infringement.

When faced with a Motion to Dismiss based on lack of standing, not only must this Court accept as true the foregoing material allegations of the Complaint; it must also construe the Complaint in a light most favorable to Parts Geek.  *Warth v. Seldin*, 422 U.S. at 501 (citation omitted).  Given the mandates of *Warth*, and based on an examination of the allegations in the Complaint, Parts Geek respectfully requests that Google's Motion to Dismiss Counts I, II, and III

14

of the Complaint for lack of standing be denied.  In the alternative, Parts Geeks requests the opportunity to amend its pleading.

> **2.      Parts Geek Has Standing To Pursue Its Trademark Dilution Claims Under Section 43(c) Of The Lanham Act, 15 U.S.C. § 1125(c) (Count V) Insomuch As It Has Alleged Facts Sufficient To Establish That It Is An "Owner" Of The "Parts Geek" Trademark.**

In Count V of the Complaint, Parts Geek asserts a valid claim for trademark dilution against USAP and Google.  Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owners mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1).

Google erroneously argues that Parts Geek is not the owner of the subject trademark, and therefore, has no standing to bring a claim for dilution.  Google's argument fails, however, given the strictures of *Warth*, which require that this Court to accept the material allegations of the Complaint as true and to construe the allegations in the Complaint in a light most favorable to Parts Geek.  In its pleading, Parts Geek has unequivocally alleged that it is the owner of the subject trademark:

- To preserve and enhance its trademark rights, Parts Geek has obtained federal trademark registration for Parts Geek Mark (Compl. ¶21);

- Parts Geek's federally registered mark is:  "Parts Geek," registered on June 12, 2007 (Compl. ¶23);

- Parts Geek also has common law rights to the Parts Geek Mark in the State of New Jersey by virtue of the mark's eligibility for protection and Parts Geek's status as the senior user of the mark (Compl. ¶24);

- Parts Geek possesses valid, federally registered trademark and service mark entitled to protection under the Lanham Act (Compl. ¶76);

- Parts Geek has expended substantial amounts in advertising the Parts Geek Mark on a nationwide basis in a broad cross-section of prominent media for many years (Compl. ¶119(A)); and

- Parts Geek has earned tens of millions of dollars in revenue on a nationwide basis in connection with the products and services that it has offered under the Parts Geek Mark (Compl. ¶119(C)).

As the owner of the trademark, Parts Geek alleges that it has incurred, and continues to incur, damages as a result of the dilution of its trademark by USAP and Google.  Contrary to Google's arguments, Parts Geek has standing to bring its dilution claim as the real party in interest.

An examination of the purpose of a dilution claims further confirms the conclusion that Parts Geek has standing to bring this claim.  Unlike a claim for trademark infringement (which assesses whether there is a likelihood that a consumer will be confused by infringement), a claim for trademark dilution examines the response of the trademark owner, asking whether the *value* of the mark will be diminished by someone else using a similar mark.  49 N.J. Prac., Business Law Deskbook § 12:37.  Trademark dilution-Defining trademark dilution (2009-2010 Ed.). Trademark dilution disregards the confusion issue and instead *aims to protect the investment of the trademark owner.  Id.*

Given this goal of protecting the value of a trademark and an entity's investment in the trademark, it is clear that Parts Geek has alleged facts sufficient to confer standing.  Parts Geek has alleged that it, through its predecessor-in-interest, Import Specialists, began adopting, using, and developing the "Parts Geek" trademark as early as April 1999.  Parts Geek's investment in the effectiveness and value of this trademark spans a decade.  Parts Geek actively monitors, develops, and markets the trademark, through a substantial expenditure of its own resources and

16

money, which has resulted in rich dividends to Parts Geek.  As such, Parts Geek, as the beneficial owner, is uniquely situated to bring this claim to protect the value of the trademark and its ten year investment.

Based on an examination of the allegations in the Complaint, Parts Geek respectfully requests that Google's Motion to Dismiss Count V of the Complaint for lack of standing be denied.  In the alternative, Parts Geeks requests the opportunity to amend its pleading.

3.     **Parts Geek Has Standing To Pursue Its Trademark Infringement Claim (Count VI) And Unfair Trade Practices Claim (Count VII) Under New Jersey State Law Insomuch As It Has Alleged Facts Sufficient To Establish That It Is An "Owner" Of The Subject Trademark.**

In Counts VI and VII of the Complaint, Parts Geek asserts valid common law claims for trademark infringement and unfair trade practices against USAP and Google.   The analysis for New Jersey statutory and common law trademark claims is the same as that under the Lanham Act.  *J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F.Supp.2d 358, 374 (D.N.J. 2002).  *See also Holiday Inns, Inc. v. Trump*, 617 F.Supp. 1443, 1464 (D.N.J. 1985) ("To establish common law service mark or trade name infringement, plaintiffs must establish that the service marks or trade names are valid and legally protectable, that they are owned by plaintiffs, and that defendant's subsequent use of the same or similar marks is infringing, *i.e.,* likely to create confusion as to the origin of the goods or services.")

As with Parts Geek's claims arising under the Lanham Act, Parts Geek's standing to bring a New Jersey statutory and common law trademark claim is apparent on the face of the Complaint and hinges upon a showing of ownership.  In particular, Parts Geek's allegations that it possesses ownership of the "Parts Geek" trademark (Compl, ¶¶21, 23, 24, 76) and has a common law right to the "Parts Geek" trademark as a senior user (Compl. ¶¶24, 131) establish

standing in the context of a statutory and common law claim under New Jersey Law. Google's

claims to the contrary simply lack merit.

With respect to Parts Geek's unfair trade practices claim, N.J.S.A. § 56:8-2 provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

N.J.S.A. § 56:8-2. The act provides a remedy to "[a]ny person" who suffers damages as a result

of conduct declared unlawful under New Jersey's Consumer Fraud Act. *General Development*

*Corp. v. Binstein*, 743 F.Supp. 1115, 1130 (D.N.J. 1990). *See also 800-JR Cigar, Inc. v.*

*GoTo.com, Inc.*, 437 F.Supp.2d 273, 295-296 (D.N.J. 2006) ("Consumers and commercial

competitors have standing to bring claims under [New Jersey's Consumer Fraud Act]."); *Conte*

*Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.*, 992 F.Supp. 709, 716 (D.N.J. 1998).

Parts Geek alleges in its Complaint that (1) it is the owner of the subject trademark

(Compl. ¶¶21, 23, 24, 76); (2) it has suffered damages as a result of USAP and Google's

misleading advertisements, which are likely to confuse prospective buyers of Parts Geek's goods

(Compl. ¶139); and (3) it is as a direct competitor of USAP (Compl. ¶38) and Google by virtue

of Google's unauthorized use of Parts Geek's trademark in its misleading "Sponsored Links"

(Compl. ¶55). As an entity that has suffered damages as a result of USAP and Google's

unlawful conduct, Parts Geek has standing to bring its unfair trade practices claim.

18

Based on the foregoing, Parts Geek respectfully requests that Google's Motion to Dismiss Counts VI and VII of the Complaint for lack of standing be denied. In the alternative, Parts Geeks requests the opportunity to amend its pleading.

**D.** **Plaintiff's Count III (Vicarious Infringement) And Count V (Dilution) Set Forth Legally Cognizable Causes Of Action That Adequately Put The Defendants On Notice Of The Essential Elements Of The Claims.**

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all factual allegations as true and must draw all reasonable inferences in plaintiff's favor. *In Re Warfarin Sodium Antitrust Litig.*, 214 F. 3d 395, 397 (3d Cir. 2000). A motion to dismiss should only be granted when it is certain that no relief could be granted under any set of facts provable by the plaintiff. *Ransom v. Marrazzo*, 848 25F.2d 398, 401 (3d Cir. 1988). When reviewing a complaint under Rule 12(b)(6), a court may also examine the facts alleged in the pleadings as well as "matters of public record, orders, and exhibits attached to the complaint and items in the record of the case." *Oshiver v. Levin, Fishbein, Sedram & Berman*, 38 F.3d 1380, 1384-85 n. 2 (3d Cir. 1984).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007) (*quoting Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Under this standard, a complaint will be deemed sufficient if it adequately puts the defendant on notice of the essential elements of a cause of action. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). The question is not whether the plaintiff will ultimately prevail; instead, it is whether the plaintiff can prove any set of facts consistent with the averments of the complaint which would show the plaintiff is

entitled to relief. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Accepting all factual allegations as true and drawing all reasonable inferences in Parts Geek's favor, Parts Geek has adequately pleaded legally cognizable claims for vicarious trademark infringement under the Lanham Act (Count III) and trademark dilution under the Lanham Act (Count V).  As explained in further detail below, Google's motion to dismiss for failure to state a claim must be denied.

### 1.   Count III Sets Forth A Legally Cognizable Claim For Vicarious Infringement Against Google.

In Count III, Parts Geeks sets forth a legally cognizable cause of action for vicarious infringement against Google that adequately puts Google on notice of the essential elements of the cause of action.  Courts have recognized that a joint tortfeasor may bear vicarious liability for trademark infringement by another. *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992) (*citing David Berg & Co. v. Gatto Int'l Trading Co.*, 884 F.2d 306, 311 (7th Cir. 1989)).  To survive a motion to dismiss, a plaintiff must plead that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties, **or** exercise joint ownership or control over the infringing product. *Id.*

Consistent with Rule 8(a)(2), which only requires that Parts Geek provide a short and plain statement of the claim, Parts Geek has clearly met this low burden in pleading its vicarious infringement claim.  For example, Parts Geek has alleged:

- Google offers a program called "AdWords" that displays advertisements to users of Google's search engine in the form of "Sponsored Links." Under its AdWords Program, Google offers advertisers the ability to select certain "keywords" that will trigger a "Sponsored Link" to the advertiser's chosen website, which

20

"Sponsored Link" Google will display above or alongside the purportedly "organic search results" (Compl. ¶56);

- Without authorization from Parts Geek, Defendant USAP has improperly positioned its www.autopartswarehouse.com website and its www.partstrain.com website, as well as other sites, as a "Sponsored Link", or the like, in various search engines, such as Google, by purchasing the search term "Parts Geek" which is the Parts Geek Mark for its own advertising, to direct and generate interest, traffic and sales from Parts Geek  to Defendant USAP's www.autopartswarehouse.com and www.partstrain.com websites and others which directly compete with Parts Geek's business.  A copy of print-outs as an example of results of Google searches illustrating Defendant USAP's advertisements is attached hereto as Exhibit "C" and made a part hereof (Compl. ¶38);

- Parts Geek has not directly or indirectly given USAP or Google permission, authority, or license to use or sell the right to use the Parts Geek Mark for the promotion of any goods and services (Compl. ¶61);

- Nevertheless, on information and belief, Google has in fact sold to USAP the "right" to use the Parts Geek Mark on several web sites or terms confusingly similar thereto as part of Google's search engine-based advertising program.  As a result, Google's "Sponsored Links" are expressly designed to draw consumers away from Parts Geek websites (Compl. ¶62);

- USAP's unauthorized use in commerce of the Parts Geek Mark generates profits for USAP and its affiliates that are directly attributable to their unauthorized exploitation of the value and name recognition associated with the Parts Geek Mark (Compl. ¶45);

- On information and belief, advertisers pay Google each time a web user clicks on keyword-targeted "Sponsored Links" that appear on Google's "results" page (Compl. ¶57); and

- On information and belief, the use of the mark "Parts Geek," such as shown above, is also confusing to consumers because, in many instances, consumers will enter the exact web address of Parts Geek's website, "www.partsgeek.com," or some variant of Parts Geek's web address into Google's search engine expecting to receive the link for Parts Geek's website. Due to Google's sale of the Parts Geek Mark and the use of such mark by USAP and to other third parties as keywords, such consumers are redirected to competitors of Parts Geek even though they originally intended to go to www.partsgeek.com.  Accordingly, Google aided USAP and other third parties in "hijacking" consumers who use their search engines to navigate the World Wide Web.  This interferes with Parts Geek's sales and business (Compl. ¶66).

21

Viewed in a light most favorable to Parts Geek, the foregoing allegations establish that USAP and Google are joint tortfeasors, who may bear vicarious liability for "hijacking" of Parts Geek's customers.  In particular, Parts Geek has alleged the existence of an apparent or actual partnership between the defendants insomuch as Google's sale of the keywords "Parts Geek" to USAP, in conjunction with the listing of USAP as a "Sponsored Link" for a "Parts Geek" key word search, has resulted in ongoing revenue generation for both Google and USAP.  Their partnership is mutually beneficial and is based upon an unauthorized infringement and usurpation of the goodwill and strength of the "Parts Geek" trademark.  As such, this claim is sufficiently pleaded.

However, even assuming that Parts Geek has failed to allege the existence of partnership (which Parts Geeks disputes), this claim stands as Parts Geek alleges that USAP and Google exercise joint ownership and control over the misappropriated "Parts Geek" trademark via Google's search engine.  Assuming all factual allegations as true and drawing all reasonable inferences in Parts Geek favor, Parts Geeks has alleged a legally cognizable action for vicarious infringement.

Based upon the foregoing, Parts Geek respectfully requests that Google's motion to dismiss Count III of the Complaint be denied.  In the alternative, Parts Geeks requests the opportunity to amend its pleading.

### 2.    Count V Sets Forth A Legally Cognizable Claim For Dilution Against USAP And Google.

In Count V, Parts Geeks sets forth a legally cognizable cause of action for dilution against USAP and Google that adequately puts the defendants on notice of the essential elements

of the cause of action.  As stated previously, Section 43(c) of the Lanham Act, 15 U.S.C. §

1125(c), provides:

> Subject to the principles of equity, the owner of a *famous* mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owners mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by *blurring* or dilution by *tarnishment* of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1) (emphases added).

Google argues that Parts Geek has failed to allege facts sufficient to establish that Parts

Geek's trademark is "famous."  This, however, is not the case.  "The key requirement is that the

mark be famous, which the [statute] defines as 'widely recognized by the general consuming

public of the United States as a designation of source of the goods or services of the mark's

owner.'"  *Green v. Fornario*, 486 F.3d 100, 105 (3d Cir. 2007) (*quoting* 15 U.S.C. §

1125(c)(2)(A)).

In particular, § 1125(c)(2)(A) provides:

For purposes of paragraph (1), a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii) The extent of actual recognition of the mark.

(iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2)(A)(i) – (iv).  An examination of the factual allegations in the Complaint

demonstrates that Parts Geek has properly alleged dilution of a "famous" mark.  To that end,

Parts Geek has pleaded the following factual allegations:

- Parts Geek, by and through its predecessor-in-interest, Import Specialists of America, Inc., began adopting and using the following trade name, service mark, logo and title Parts Geek ("the Mark"), at least as early as April of 1999, in connection with its high quality sales and services throughout the United States and worldwide (Compl. ¶20);

- The Parts Geek Mark is a unique and famous distinctive designation of the source of Parts Geek's products and services (Compl. ¶25);

- Parts Geek has invested substantial amounts in advertising and marketing in order to build the fame, reputation, and goodwill of the Parts Geek Mark.  Parts Geek advertises through a variety of media (Compl. ¶26);

- Parts Geek also promotes its products and services on the Internet, via its own website and through advertising on the websites of third parties (Compl. ¶27);

- Parts Geek's products have been widely advertised, extensively offered and sold under the Mark throughout the United States and worldwide and the Mark has become, through widespread use and favorable public acceptance and recognition, a famous Mark and asset of substantial value as a symbol of Parts Geek, its quality products, services and its goodwill.  (Compl. ¶28);

- Parts Geek owns the domain name "partsgeek.com," which is used in connection with operating website located at www.partsgeek.com, and which displays the Mark throughout the United States and worldwide.  (Compl. ¶33);

- Through Parts Geek's actions, and because of widespread and favorable public acceptance and recognition, the Parts Geek Mark has become distinctive designations of the source of origin of Parts Geek's products and services.  The Parts Geek Mark has become uniquely associated with, and hence identifies, Parts Geek.  The mark is an asset of substantial value as a symbol of Parts Geek, its quality products and services, and its goodwill (Compl. ¶34);

- The Parts Geek Mark has become "famous" within the meaning of the dilution provisions of the Lanham Act, 15 U.S.C. §1125(c).  For example, as a result of Parts Geek's advertising and promotional efforts, the mark "Parts Geek" has, on information and belief, attained some of the highest levels of brand recognition among auto parts consumers (Compl. ¶36);

24

- Parts Geek conducts a substantial amount of business over the Internet and has made a sizeable investment in the development of its online business.  It is generally more beneficial to Parts Geek when consumers purchase directly through Parts Geek.  Among other reasons, this is because when consumers buy through www.partsgeek.com, it assists Parts Geek in conveying important information to its customers, in developing a direct relationship and future business with its customers and in minimizing costs associated with various transactions while minimizing the cost of acquiring a customer (Compl. ¶37);

- Parts Geek has expended substantial amounts in advertising the Parts Geek Mark on a nationwide basis in a broad cross-section of prominent media for many years (Compl.¶119(A));

- The Parts Geek Mark has received massive publicity from third parties (Compl.¶119(A));

- Parts Geek has earned tens of millions of dollars in revenue on a nationwide basis in connection with the products and services that it has offered under the Parts Geek Mark (Compl.¶119(A));

- The Parts Geek Mark has achieved a high level of actual recognition among the consuming public (Compl.¶119(A)); and

- Parts Geek has obtained federal trademark registration for its Parts Geek Mark. (Compl.¶119(D).

Parts Geek has adequately alleged possession of a "famous" mark within the strictures of 15 U.S.C. § 1125(c).  Specifically, Parts Geek alleges recognition of its trademark in the general consuming public of the United States and worldwide, as demonstrated, in part, by (1) a ten year duration of usage, (2) extensive internet and other media marketing campaigns, (4) worldwide advertising and geographic extent of sales, and (3) the generation of tens of millions of dollars in business.  Google's argument that Parts Geek has only alleged "niche fame" in the automotive parts industry, which it maintains is insufficient to support a claim for dilution in light of Congress's 2006 amendments to the statute, plainly ignores Parts Geek's allegations of worldwide recognition in the general consuming public.  Accepting all material allegations as true, as this Court must do, Parts Geek has properly pleaded a "famous" trademark.

25

Based upon the foregoing, Parts Geek respectfully requests that Google's motion to dismiss Count V of the Complaint for failure to state a claim be denied. In the alternative, Parts Geek requests the opportunity to amend its pleading.

## III.   CONCLUSION

For all of the foregoing reasons, Plaintiff submits that Defendant Google's Motion should be dismissed and Defendant directed to file an answer within twenty (20) days.

Respectfully submitted,

Weir & Partners LLP

By:   s/ Steven E. Angstreich
        Steven E. Angstreich
        Carolyn C. Lindheim
        Melissa LeBon
        Attorneys for Plaintiff
        sangstreich@weirpartners.com
        clindheim@weirpartners.com
        mlebon@weirpartners.com
        10 Melrose Avenue, Suite 450
        Cherry Hill, New Jersey 08003
        856-740-1490