```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| ROBERT DUKE,<br><br>        Plaintiff,<br><br>   v.<br><br>CLEAN HARBORS, INC.<br><br>        Defendant. | HON. JEROME B. SIMANDLE<br><br>CIVIL NO. 04-5155<br><br>**OPINION** |

APPEARANCES:

Mark Cimino, Esq.
1045 Cooper Street
Deptford, New Jersey 08096
    Attorney for Plaintiff Robert Duke

Richard Cino, Esq.
Dena E. Epstein, Esq.
JACKSON LEWIS LLP
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, NJ 07960
    Attorney for Defendant Clean Harbors, Inc.

**SIMANDLE**, District Judge:

    Plaintiff brought this breach of contract action to recover twenty-six weeks worth of severance benefits following his layoff in 2003. Defendant argues that Plaintiff is not entitled to those benefits under the severance plan in place when Plaintiff's employment was terminated. This matter is before the Court upon the cross-motions for summary judgment.[1]

---

[1] The Complaint additionally asserts claims for unjust enrichment and under "the New Jersey Wage Payment Act," N.J.S.A. 34:11-4.1 et seq. (Compl. ¶¶ 13, 15.) In connection with the instant motions, however, Plaintiff only advances arguments in support of the breach of contract claim. Thus, the Court will only address that claim.

For the reasons explained below, the Court finds in the first instance that Plaintiff's state law claims for severance benefits are preempted by ERISA, and that they arise under Section 502(a) of ERISA, 29 U.S.C. § 1132(a). Next, the Court holds as a matter of law that Defendant objectively manifested a contractual intent to provide vested employee welfare benefits to Plaintiff equaling twenty-six weeks of pay. As Plaintiff accepted this offer by performance, the Court additionally finds that a unilateral contract was formed, obligating Defendant to honor the promised welfare benefits. Accordingly, Defendant's motion for summary judgment will be denied as to Plaintiff's ERISA claim and granted as to the state law claims, and judgment will be entered in favor of Plaintiff for payment of 26 weeks' severance pay.

**I.  BACKGROUND**

The facts that bear upon these cross-motions are straight forward.

Plaintiff began working at the Logan Township Hazardous Waste Incinerator in 1970. (Pl. Ex. A.) At the time, the incinerator complex was owned by Rollins Environmental Services, Inc. ("Rollins"). In 1997, Rollins consolidated with Laidlaw Environmental Services ("Laidlaw"). Plaintiff claims that as part of his compensation package with Rollins, Plaintiff earned separation pay of one week for every year of service performed.

2

(Pl. Ex. D.)

A short time after Rollins and Laidlaw consolidated, Laidlaw consolidated with Safety-Kleen Corporation ("Safety-Kleen"). According to an "Organizational Announcement" issued by Safety-Kleen to "All Notes Users North America" on August 18, 2000, the company "reinstitute[d] a Severance Plan in order to provide 'peace of mind' to all employees in the event that one would lose his/her job through no fault of their [sic] own." (Pl. Ex. F.) Additionally, the notice stated that the severance plan had been approved by the U.S. Bankruptcy Court in Delaware. According to that plan:

> The payout, while unemployed, amounts to one (1) week of severance pay for each year of service (calculation based on the individual's completed months of service), with a minimum of two (2) weeks and a maximum of twenty-six (26) weeks pay. Thirty percent (30%) of an individual's total severance will be paid in a lump sum in his/her first severance paycheck following the execution of a Settlement and Release Agreement. No further severance will be paid until enough time has passed to offset the lump sum payment. At that time, if the individual is still unemployed and remains unemployed, he/she will receive the remainder of the total severance (including Health and Life Insurance benefits) through salary continuance on his/her normal payroll frequency.

(Id.)

On August 27, 2002, Plaintiff's employment with Clean Harbors Environmental Services, Inc. ("CH Environmental"), a subsidiary of Defendant Clean Harbors, Inc. ("Clean Harbors"), commenced after Clean Harbors purchased the assets of Safety-Kleen's Chemical Services Division through an asset acquisition

3

agreement dated February 22, 2002 ("Agreement"). The Agreement stated the company's Purchaser Severance Policy, in part, as follows:

> Clean Harbors will be responsible for any severance due, as a result of termination of an employment by Clean Harbors other than for Cause . . ., for all such employees who accept an offer of employment with Clean Harbors including those who accept such an offer and then are asked to relocate (which they can refuse). . . . Clean Harbors will also not pay severance for employees of the Business unless they accept the offer of employment with Clean Harbors and agree to continue such employment after the Closing.
>
> All employees who are eligible for employment and severance, as set forth above, and who accept employment with Clean Harbors, will be eligible for the . . . severance plan.

(Pl. Ex. J.)

On September 16, 2003, an employee notice was distributed to all Clean Harbors employees, stating that the Board of Directors of Clean Harbors voted to terminate the Purchase Severance Policy contained in the Agreement. Effective September 19, 2003, Plaintiff's employment was terminated by CH Environmental. Plaintiff was offered four weeks severance pay plus four weeks of continued health and dental insurance, in exchange for a release of claims.

Plaintiff filed this Complaint on September 16, 2004 in Superior Court, Law Division, Gloucester County, New Jersey, under state law. The action was subsequently removed here by Defendant, claiming federal question jurisdiction under 28 U.S.C.

4

§ 1331 arising under an ERISA-regulated employee benefit plan. Currently pending before the Court are cross-motions for summary judgment.

**II. SUMMARY JUDGMENT STANDARD OF REVIEW**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

**III. DISCUSSION**

    A.    <u>Jurisdiction and Preemption</u>

Plaintiff's claim for severance benefits under an employee welfare benefits plan arises under Section 502(a) of ERISA, 29

U.S.C. § 1132(a). This Court therefore has federal question jurisdiction under 28 U.S.C. § 1331.

Plaintiff's state law claims for violation of the New Jersey Wage Payment Act, breach of contract, and unjust enrichment are all subject to ERISA's broad preemption provision if the claim herein meets two requirements: First, the Severance Plan must be an ERISA plan; and second, the claims must "relate to" the Severance Plan. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987); Wood v. Prudential Insurance Co. of Am., 207 F.3d 674 (3d Cir.), cert. denied, 531 U.S. 927 (2000); Pane v. RCA Corp., 868 F.2d 631, 635 (3d Cir. 1989). Such preemption is governed by Section 514(a) of ERISA which provides, with exceptions not relevant here, that ERISA shall supersede "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). The preemption of "state law" includes both common law and statutory law, New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 658-59 (1995). Thus, a state law that "implicate[s] an area of core ERISA concern," such as the payment of benefits, is preempted. Egelhoff v. Egelhoff, 532 U.S. 141, 147-49 (2001).

In the present case, Plaintiff does not oppose Defendant's characterization of the Severance Plan as an ERISA plan for these purposes, and that his claims for benefits relate to this ERISA-

regulated Plan. Accordingly, it follows that the claims for these severance benefits arising under state law – the New Jersey Wage Payment Act, breach of contract and unjust enrichment – are preempted, and that Plaintiff's claim will be deemed to arise under § 502(a) of ERISA, 29 U.S.C. § 1132(a).

    B.    <u>Severance Benefit Plan under ERISA</u>

Employees enjoy flexibility to reduce or even eliminate a welfare plan under ERISA, including a severance benefit plan. <u>Inter-Modal Rail Employees Ass'n v. Atchinson, Topeka and Santa Fe Ry. Co.</u>, 520 U.S. 510, 515 (1997). The Supreme Court has emphasized that "[e]mployees . . . are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans . . . . Nor does ERISA establish any minimum participation, vesting, or funding requirements for welfare plans as it does for pension plans . . . . Accordingly, that [the employer] amended its plan to deprive respondents of health benefits is not a cognizable complaint under ERISA; the only cognizable claim is that the company did not do so in a permissible manner." <u>Curtiss-Wright Corp. v. Schoonejongen</u>, 514 U.S. 73, 78 (1995) (citations omitted). Thus a welfare plan, once instituted, does not become a perpetual promise from the employer to the employee; it can be terminated by the employer with no further benefits to be earned going forward.

But the Court of Appeals has recognized that a deferred

compensation can create a unilateral contract to pay benefits for time accrued under the plan before its termination. Kemmerer v. ICI Americas, Inc., 70 F.3d 281 (3d Cir. 1995), cert. denied, 517 U.S. 1209 (1996). In Kemmerer, participants in a deferred executive compensation (or "top hat") plan, alleged that their former employer had terminated the plan and changed the terms under which benefits would be paid, violating ERISA. Even though ERISA's fiduciary standards are inapplicable to a top-hat plan, the Court of Appeals noted, that fact "does not give employers carte blanche to amend welfare benefit plans where the plans themselves may be interpreted to provide that benefits are contractually vested or accrued." Id. at 288, quoting Carr v. First Nationwide Bank, 816 F. Supp. 1476, 1489 (N.D.Cal. 1993). The Court found that unilateral contract principles were applicable to an employer's actions in terminating a plan, Kemmerer, 70 F.3d at 288, and that "those principles _clearly apply after performance is complete and the participant's rights have vested_." Id. Thus, where plan documents confer a benefit that vests upon performance by the employee, and the plan is silent upon the employer's right to eliminate such benefits, liability is established for breach of the unilateral contract, giving rise to an ERISA claim. Id. at 288-89. The issue, therefore, becomes whether under the welfare plan's terms, the benefit has been shown to be vested or accrued, before the plan was terminated.

C.  <u>Vesting or Accrual of Severance Plan Benefits</u>

The issue here is whether Defendant became legally obligated to provide vested or accrued benefits to Plaintiff from his thirty-three years of employment with Defendant (and its predecessors) before being laid off on September 19, 2003.[2] For the following reasons, the Court holds as a matter of law, under the undisputed facts of this case, that Plaintiff is so entitled.

"[W]elfare benefits are left to contract." <u>Bidlack v. Wheelabrator Corp.</u>, 993 F.2d 603, 616 (7th Cir.) (en banc) (Easterbrook, J., dissenting), <u>cert.</u> <u>denied</u>, 510 U.S. 909 (1993). "As a general rule, welfare plans such as severance plans may be freely amended or canceled at any time." <u>Amatuzio v. Gandalf Systems Corp.</u>, 994 F. Supp. 253, 265 (D.N.J. 1998). Here, Plaintiff does not challenge the modification or subsequent cancellation of the Severance Plan by Defendant. Instead, Plaintiff argues that he is entitled to benefits which vested or accrued <u>prior</u> to that date. This Court agrees.

The Court will begin its analysis by way of a simple

---

[2] "It is well-settled that nothing in ERISA prevents an employer from providing vested employee welfare benefits by contract." <u>Amatuzio</u>, 994 F. Supp. at 265 (citing <u>Inter-Modal Rail Employees Ass'n v. Atchison, Topeka and Sanata Fe Ry. Co.</u>, 520 U.S. 510 (1997)). Additionally, "[t]his Court sees no reason why severance plans may not be recognized as being unilateral contracts in ERISA cases." <u>Amatuzio</u>, 994 F. Supp. at 266. For these reasons, the Court need "not attempt to iron out the conceptual complexity of ERISA's relationship with contract principles that lurks beneath the parties' dispute in this case." <u>Id.</u> at 266.

9

illustration:

> If an employee is promised $10 per hour effective Monday, and told that her wage can be reduced at any time, and on Wednesday her wage is cut to $5 effective Thursday, her employer cannot refuse on pay day to give her $10 per hour for her work on Monday through Wednesday. Far from requiring that the employer express an explicit intent to pay $10 per hour for Monday through Wednesday's work notwithstanding the employer's freedom to reduce wages at any time, the Third Circuit held that what would have to be preserved explicitly would be an employer's right to apply the reduced wage retroactively to Monday through Wednesday's work.

Amatuzio, 994 F. Supp. at 266 (citing Kemmerer v. ICI America Inc., 70 F.3d 281, 287 (3d Cir. 1995)). Here, Defendant does not argue that it preserved such a right, explicitly or otherwise, to retroactively reduce the benefit. Accordingly, the only issue before the Court is whether a unilateral contract was in place obligating Defendant to provide vested benefits.[3] For the following reasons, the Court holds that there was a unilateral contract in place entitling Plaintiff to certain benefits which

---

[3] Additionally, Defendant argues that Plaintiff was not a party to the Agreement and, therefore, that he is not entitled to the benefits it provided. This argument has no foundation in the case law of this Circuit. To the contrary, "[s]everance plans adopted to encourage employees to stay with their employer, and severance plans awarding severance based on length of service, are unilateral contracts, regardless of whether they are the product of negotiations between employer and employees." Amatuzio v. Gandalf Systems Corp., 994 F. Supp. 253, 266 (D.N.J. 1998) (citing Taylor v. Continental Group Change in Control Severance Pay Plan, 933 F.2d 1227, 1232 (3d Cir. 1991); Bruch v. Firestone Tire and Rubber Co., 828 F.2d 134, 147 (3d Cir. 1987), aff'd in part, rev'd in part on other grounds, 489 U.S. 101 (1989)).

10

Defendant may not avoid paying simply because the plan was ultimately cancelled.

Similarly, in <u>Amatuzio</u>, 994 F. Supp. at 265, the plaintiffs did not disagree that their employer's severance plan could be freely modified or cancelled at any time. Instead, like Plaintiff here, they argued that they earned vested contractual rights prior to the date the plan was modified. They alleged that the defendant employer offered to give its employees 1-3 weeks' pay as severance for each year they worked, in the event their employment was terminated for reasons other than misconduct. <u>Id.</u>

The court there accepted the plaintiffs' argument that if sufficient proofs were submitted that such an offer were actually made by the employer, a unilateral contract would have formed when the employees accepted that offer by continuing to work for the defendant. In such a case, the court held, the employer's duty to perform – <u>i.e.</u>, to pay employees 1-3 weeks' pay for each year of work completed – would have been triggered when the employees were laid off. As the court explained:

> During the life of a unilateral severance pay contract such as the one alleged to exist here, an employee earns the right to receive one week's pay per year worked in the event she is terminated. Her rights to receive severance pay under this formula vest as she works. If the severance contract is canceled by her employer pursuant to a reservation of rights clause, then the employee ceases earning rights to one week's pay per year worked (subsequent to the contract cancellation) in the event she is terminated. But if

> she is terminated, her employer's duty to perform
> (i.e., its duty to pay her one week's pay per year
> worked prior to the contract's cancellation) is
> triggered and its failure to do so is a breach of
> contract.

Id. at 267. "A contrary rule would lack any basis in contract law and would render the employer's promise under the unilateral contract illusory." Id. at 266.

Of course, as the court in Amatuzio realized, that unilateral contracts may provide for severance benefits is not to say that one existed in this case. 994 F. Supp. at 267. Here, as in Amatuzio, the defendant argues that no unilateral contract existed as a matter of law because Plaintiff has provided insufficient proofs that his employer objectively manifested a contractual intent to provide a vested severance benefit. The Court disagrees with Defendant.

First, the company submitted the reinstituted Severance Policy to the U.S. Bankruptcy Court in Delaware for final approval. Moreover, the company subsequently relayed news of the Bankruptcy Court decision to approve the policy to its employees, including Plaintiff, in August, 2000. Additionally, the Company articulated the specifics of the severance plan in the August announcement. In light of the above, the Court holds first that the company objectively manifested its intent to implement the plan by submitting it for court approval, and then by announcing the specifics of the plan to its employees. Nothing in the plan

stated that the employer reserved the right to retroactively cancel the severance benefits earned under the plan.

Moreover, the Court finds that Plaintiff accepted the offer for benefits when he continued to work for the company. As the August, 2000 announcement stated, the company wanted to "reinstitute a Severance Plan in order to provide 'peace of mind' to all employees in the event that one would lose his/her job through no fault of their [sic] own." (Pl. Ex. F.) Indeed, severance plans are awarded to encourage employees to stay with their employer. Amatuzio, 994 F. Supp. at 266. Employers may rely upon the credits earned by their continuing performance, through good times and bad, without fear that these vested benefits will be wiped out a few days before severance actually occurs. As part of a compensation package, the accrual of severance pay is a deferral of wages while the Severance Plan was in effect.

The Court holds that by continuing to work for Defendant, thereby accepting its offer for severance benefits, Plaintiff entered into a unilateral contract obligating the company to pay him one week of severance pay for each year of service (up to 26 weeks). Plaintiff performed, and now Defendant must perform. Defendant cannot now avoid its obligation to pay benefits simply because the plan was eventually modified and then cancelled at a

later date.[4]  "Under unilateral contract principles, once the employee performs, the offer becomes irrevocable, the contract is completed, and the employer is required to comply with its side of the bargain."  Kemmerer, 70 F.3d at 287.  Accordingly, Plaintiff is entitled to summary judgment on its breach of contract claim.

### III. CONCLUSION

For these reasons, the Court will deny Defendant's motion for summary judgment as to Plaintiff's ERISA claim and grant the motion as to the state law claims.  Moreover, the Court will grant Plaintiff's motion for summary judgment in part, and judgment will be entered in favor of Plaintiff on his ERISA claim for payment of 26 weeks' severance pay.  An appropriate Order will be entered.


**June 30, 2006**                                           **s/ Jerome B. Simandle**
Date                                                        JEROME B. SIMANDLE
                                                            U.S. District Judge

---

[4] Finally, that Defendant modified its severance policy in 2002 pursuant to the February 22, 2002 asset acquisition agreement is irrelevant as Plaintiff had already been employed by Defendant and its predecessors for over 26 years, (Pl. Exs. A-C,) therefore entitling him to the maximum 26 weeks' severance pay.

14