UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PARTS GEEK, LLC, | : |
| Plaintiff, | :    Civil Action No.: 09-cv-05578 (MLC) (LHG) |
| v. | :    **Motion Date: March 1, 2010** |
| U.S. AUTO PARTS NETWORK, INC., and GOOGLE, INC. | : |
| Defendants. | : |

REPLY OF DEFENDANT U.S. AUTO PARTS NETWORK, INC. IN SUPPORT OF
MOTION TO DISMISS OR IN THE ALTERNATIVE, TO TRANSFER

Kurt W. Krauss, Esq.
Adam R. Bialek, Esq.
Scott M. Smedresman, Esq.
WILSON ELSER MOSKOWITZ EDELMAN
& DICKER, LLP
Attorneys for Defendant
U.S. Auto Parts Network, Inc.

William J. O'Shaughnessy, Esq.
Scott S. Christie, Esq.
MCCARTER & ENGLISH, LLP
Attorneys for Defendant
U.S. Auto Parts Network, Inc.

Dockets.Justia.com

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION............................................................................1

II.    ARGUMENT ON MOTION TO DISMISS................................... 1

    A.    Standard for Dismissal Under Fed. R. Civ. P. 12(b)(6)............................. 1

    B.    Plaintiff's Standing Remains Unexplained and Unclear................................ 3

        1.    Plaintiff's Allegations of an Interest
            in the Mark are Not Well Pleaded ................................................... 3

        2.    Alternatively, Plaintiff's Infringement
            Dilution and State Claims Fail ................................................... 6

            i.    Federal Trademark Infringement................................... 7

            ii.    Federal Trademark Dilution................................... 8

            iii.   State Trademark Claims................................... 8

    C.    Plaintiff's RICO Claim Continues to Fail to Allege Necessary Elements.......... 9

    D.    Plaintiff's Construction of a CFAA Claim Contradicts the Act......................12

    E.    Conclusion...........................................................................14

III.   ARGUMENT ON MOTION TO TRANSFER VENUE.........................15

IV.   CONCLUSION.......................................................................15

## TABLE OF AUTHORITIES

**CASE**                                                                                                                                           **PAGE(S)**

*ALA, Inc. v. CCAIR, Inc.,*
    29 F.3d 855 (3rd Cir. 1994) ............................................................................... 3

*American Centennial Ins. Co. v. Seguros La Republica, S.A.,*
    1996 WL 304436 (S.D.N.Y. 1996) ...................................................................... 2

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955 (2007) ................................................................ 3

*Carpet Group Int'l v. Oriental Rug Importers Ass'n,*
    227 F.3d 62 (3d Cir. 2000) ........................................................................... 2, n.1

*Cent. Mfg. Co. v. Pure Fishing, Inc.,*
    392 F. Supp. 2d 1046 (N.D. Ill. 2005) ............................................................... 7

*Chas. S. Winner, Inc. v. Polistina,*
    2007 U.S. Dist. LEXIS 40741 (D.N.J. 2007) .................................................. 12

*Commerce Bancorp, Inc. v. BankAtlantic,*
    285 F. Supp. 2d 475 (D.N.J. 2003) ........................................................... 4, 6, 8, 9

*Davis v. Wilson,*
    2009 U.S. Dist. LEXIS 21843 (W.D. Pa. Mar. 12, 2009) ................................ 2

*Dovenmuehle v. Gilldorn Mortg. Midwest Corp.,*
    871 F.2d 697 (7th Cir. 1989) ............................................................................ 3

*Emcore Corp. v. PricewaterhouseCoopers LLP,*
    102 F. Supp. 2d 237 (D.N.J. 2000) .................................................................... 9

*Ernst v. Rising,*
    427 F. 3d 351 (6th Cir. 2005) ..................................................................... 5, n.3

*Evercrete Corp. v. H-Cap Ltd.,*
    429 F. Supp. 2d 612 (S.D.N.Y. 2006) ........................................................ 10, 11

*Experian Mktg. Solutions, Inc. v. U.S. Data Corp.,*
    2009 U.S. Dist. LEXIS 82075 (D. Neb. Sept. 9, 2009) .................................... 7

*Ferrero U.S.A., Inc. v. Ozak Trading, Inc.,*
    753 F. Supp. 1240 (D.N.J. 1991) ................................................................... 7-8

*Goody Products, Inc. v. Dun & Bradstreet, Inc.,*
    241 N.J. Super. 297 (Law Div. 1990) ............................................................... 9

*Icee Distributors, Inc. v. J&J Snack Foods Corp.*,
    325 F.3d 586 (5th Cir. 2003) ................................................................. 8

*In re Burlington Coat Factory Securities Litigation*,
    114 F. 3d 1410 (3rd Cir. 1997) .............................................................. 2

*Island Software & Computer Serv. v. Microsoft Corp.*,
    413 F.3d 257 (2d Cir. 2005) ............................................................ 5, n.3

*Lockheed Martin Corp. v. Speed*,
    2006 U.S. Dist. LEXIS 53108 (M.D. Fla. Aug. 1, 2006) ......................... 13, 14

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004)................................................................ 11

*Mostowfi v. 12 Telecom Int'l, Inc.*,
    269 Fed. Appx. 621(9th Cir. 2008) ...................................................... 6

*Morales v. Beard*,
    2008 U.S. Dist. LEXIS 108062 (W.D. Pa. 2008) ..................................... 3

*Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.*,
    361 F. Supp. 2d 1244 (D. Wash. 2004) ............................................ 2, n.1

*Nexans Wires S.A. v. Sark-USA, Inc.*,
    166 Fed. Appx. 559 (2d Cir. 2006) .................................................. 12-13

*Payne v. DeLuca*,
    433 F. Supp. 2d 547 (W.D. Pa. 2006) ................................................ 2, 6

*Pryor v. National Collegiate Athletic Ass'n*,
    288 F.3d 548 (3d Cir. 2002) ......................................................... 4-5, n.3

*Quabaug Rubber Co. v. Fabiano Shoe Co.*,
    567 F.2d 154 (1st Cir. 1977) ......................................................... 3, 6, 7

*Schuylkill Energy Resources v. Pennsylvania Power & Light Co.*,
    113 F.3d 405 (3d Cir. 1997) ................................................................ 2

*Shell Co. v. Los Frailes Serv. Station, Inc.*,
    596 F. Supp. 2d 193 (D.P.R. 2008) .................................................. 4, 6, 7

*State v. Ball*,
    141 N.J. 142 (1995) ........................................................................ 10

*Sutor v. Fed. Emergency Mgmt. Agency*,
    2009 U.S. Dist. LEXIS 59152 (E.D. Pa. July 9, 2009) .............................. 2

*Tedeschi v. Smith,*
    2010 U.S. Dist. LEXIS 2336 (D.N.J. Jan. 12, 2010) ....................................................... 10

*Trans World Airlines, Inc. v. Hughes,*
    449 F.2d 51 (2d Cir.1971) ................................................................................. 2

*Warburton v. Foxtons, Inc.,*
    2005 U.S. Dist. LEXIS 39615 (D.N.J. 2005) ................................................... 2, 5

## FEDERAL STATUTES

18 U.S.C. § 1030.................................................................................................................12

18 U.S.C. § 1961 ............................................................................................................10, 11

## STATE STATUTES

N.J. Stat. § 2C:41-1 ......................................................................................................10, 11

## I.   **INTRODUCTION**

Despite its exhortations in the Opposition to this Motion, Plaintiff Parts Geek, LLC

("Parts Geek" or "Plaintiff") has not pleaded that it is the proper party in interest to bring the

trademark-related claims asserted in this suit, and has improperly pleaded its other causes of

action. Plaintiff's reassertion of baseless allegations as "facts" adds nothing to the adjudication of

this motion. This motion should be decided not on the bald and contradictory allegations

repeated and expanded upon by Plaintiff's Opposition, but rather as a matter of law, as Plaintiff

cannot prove standing and has improperly pleaded its causes of action.

Indeed, the Complaint pleads self-contradictory statements which are further undermined

by documentary evidence attached to the Complaint, resulting in a failure to properly plead any

legal interest, let alone ownership of, or an exclusive license in, the PARTS GEEK trademark

(the "Mark"). Thus, Plaintiff's trademark claims fail and should be dismissed.

In addition, Plaintiff misconstrues the law and the plain meanings of the Racketeer

Influenced Corrupt Organizations Act ("RICO") and the Computer Fraud and Abuse Act

("CFAA"), and has fundamentally failed to allege a sufficient factual basis to support such

claims. Because Plaintiff's failures derive from a lack of an adequate factual basis, in addition to

an improper pleading of that factual basis, allowing Plaintiff to amend its pleading of the RICO

and CFAA counts is futile and these claims too should be dismissed without leave to re-plead.

## II.   **ARGUMENT ON MOTION TO DISMISS**

### A.   **Standard for Dismissal Under Fed. R. Civ. P. 12(b)(6)**

Plaintiff correctly notes that under FRCP 12(b)(6) a court must treat all well pleaded

allegations in a Complaint as true for the purposes of adjudicating a motion to dismiss.[1] *In re*

---

[1] USAP notes that Plaintiff makes no attempt to respond to the argument that the Complaint should be dismissed pursuant to FRCP 12(b)(1) for lack of jurisdiction due to improper standing as well as pursuant to FCRP 12(b)(6). When a defendant brings a factual challenge to a Court's jurisdiction to hear a case under FRCP 12(b)(1), the Court

*Burlington Coat Factory Securities Litigation*, 114 F. 3d 1410, 1420 (3rd Cir. 1997). A court, however, is under no obligation to accept as true allegations that are not well pleaded, such as self contradictory or conclusory statements. *See Schuylkill Energy Resources v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) ("We are not, however, required to accept as true unsupported conclusions and unwarranted inferences"); *Sutor v. Fed. Emergency Mgmt. Agency*, 2009 U.S. Dist. LEXIS 59152, *29 (E.D. Pa. July 9, 2009) ("vague and potentially contradictory" allegations are insufficient); *Payne v. DeLuca*, 433 F. Supp. 2d 547, 612 (W.D. Pa. 2006) ("Plaintiffs have made allegations ... which are not merely offered in the alterative, but are self-contradictory, a defect which is fatal to their claims"); *American Centennial Ins. Co. v. Seguros La Republica, S.A.*, 1996 WL 304436, *16 (S.D.N.Y. 1996) ("Allegations are not well pleaded if they are 'made indefinite or erroneous by other allegations in the same complaint[, or] ... are contrary to facts of which the Court will take judicial notice'") (*quoting Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir.1971)).

Furthermore, in determining if a Complaint is well pleaded, a court may consider any documents attached to the Complaint. *See In re Burlington*, 114 F.3d at 1426; *Warburton v. Foxtons, Inc.*, 2005 U.S. Dist. LEXIS 39615, *10 (D.N.J. 2005) ("To the extent that Plaintiff's allegations are contradicted by the documents attached to the Complaint upon which its claims are based, the Court need not accept such allegations as true"); *Davis v. Wilson*, 2009 U.S. Dist. LEXIS 21843, *5 (W.D. Pa. Mar. 12, 2009) (a "court need not ... accept as true allegations that contradict matters properly subject to judicial notice or by exhibit"). Moreover, the facts

---

"is free to weigh the evidence and satisfy itself whether it has power to hear the case.... In such a situation, 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Carpet Group Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000)(citation omitted); *see also Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.*, 361 F. Supp. 2d 1244, 1256 (D. Wash. 2004) (dismissing trademark infringement claim under FRCP 12(b)(1) due to lack of standing where plaintiff did not own asserted mark).

exhibited in documents appended to a complaint govern in light of a contradiction with the facts

asserted in that complaint. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3rd Cir. 1994).

Ultimately, "[t]he question to be resolved is: whether, taking the factual allegations of the

complaint, which are not contradicted by the exhibits and matters of which judicial notice may

be had, ... are the 'factual allegations ... enough to raise a right to relief above the speculative

level...'" *Morales v. Beard*, 2008 U.S. Dist. LEXIS 108062, *5 (W.D. Pa. 2008) (*citing Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-1965 (2007)).

**B.**    **Plaintiff's Standing Remains Unexplained and Unclear**

In reciting the alleged basis for Plaintiff's standing to assert its trademark-related claims,

the Complaint is self-contradictory, and documents attached to the Complaint exacerbate the

problem. As such, Plaintiff's allegation of being a licensee of the Mark is not properly pleaded,

and as a result, the trademark-related claims brought against USAP (Counts One and Four

through Seven) should be dismissed for lack of standing. Moreover, even if this Court

determines that Plaintiff has somehow pleaded a valid license in the Mark, at least Plaintiff's

federal trademark infringement (Count One), federal trademark dilution (Count Five), common

law trademark infringement (Count Six) and New Jersey unfair trade practices (Count Seven)

claims should be dismissed for lack of standing.

**1.**    **Plaintiff's Allegations of an Interest in the Mark are Not Well Pleaded**

In order to bring Plaintiff's trademark-related claims, it must plead that it owns or has a

valid interest in the Mark. *See Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 160 (1st

Cir. 1977) (One that is "not a 'registrant' or an 'exclusive licensee' ... does not have standing to

assert [a claim under] ... § 1114. Nor does it have standing to seek relief for common law

trademark infringement"); *Dovenmuehle v. Gilldorn Mortg. Midwest Corp.*, 871 F.2d 697, 700-

701 (7th Cir. 1989) (plaintiff without legal interest in the mark lacks standing to assert Lanham

Act § 1125(a) claim); *Shell Co. v. Los Frailes Serv. Station, Inc.*, 596 F. Supp. 2d 193, 202

(D.P.R. 2008) (dilution claims only available to owner of mark); *Commerce Bancorp, Inc. v.

BankAtlantic*, 285 F. Supp. 2d 475, 483 (D.N.J. 2003) (infringement and unfair competition

under New Jersey law analyzed under Lanham Act standards).

     Instead of explaining the contradictory statements and evidence contained in its

Complaint relating to Plaintiff's interest in the Mark, Plaintiff asserts that it is the Mark's

"functional owner" based on a variety of allegations. Opp. 13-15. This assertion, however,

ignores the ambiguity and contradictory nature of the pleaded chain of title of the Mark and

precisely what rights, if any, Plaintiff actually has in the Mark.

     These include the following contradictory statements:

- "Parts Geek has obtained federal trademark registration for the Parts Geek mark" (Opp.

    4; Comp. 21), despite the fact the registration record attached to the Complaint as Exhibit

    A lists Import Specialists of America, Inc. as the registrant (Comp., Ex. A);

- "Parts Geek also has common law rights to the Parts Geek Mark in the State of New

    Jersey" (Opp. 4; Comp. 24), despite the fact that the Plaintiff later alleges that Web Geek,

    LLC owns the Mark (Opp. 5; Comp. 30);

- "Registration No. 3,250,569 [for the Mark] and common law rights to use the mark were

    assigned to Web Geek, LLC and licensed to Parts Geek by Import Specialists of America,

    Inc." (Opp. 5; Comp. 30), despite the fact that the "Trademark Assignment" purportedly

    showing such transfer is a trademark assignment from Christopher R. Grosso to Web

    Geek, LLC (Comp., Ex. B)[2], and that no assignments are recorded with the USPTO[3];

---

[2]  Indeed, this purported assignment filed as an exhibit to the Complaint does not even include the referenced
"Exhibit A" to the assignment, which purports to specify the trademarks allegedly assigned by Christopher R.
Grosso to Web Geek, LLC. Accordingly, it does not even support the contention that the Mark was assigned in this
manner, albeit inadequately to confer standing on Plaintiff.

[3]  Though Plaintiff attacks USAP's submission of USPTO records as improper, a Court is permitted to look outside
the pleadings in resolving a motion to dismiss, particularly where standing is challenged. *See Pryor v. National*

- "Mr. Grosso[, ...] the owner of Import Specialists, ... assigned the trademark to Web Geek" (Opp. 14 n.3), without any explanation as to how Mr. Grosso acquired ownership of the Mark from Import Specialists of America, Inc., the claimed prior owner of the Mark (Opp. 5; Comp. 20) and the listed registrant of the Mark (Comp., Ex. A);

- "[T]he trademark was licensed to Parts Geek by Import Specialists of America, Inc. on July 14, 2008 (Plaintiff's Opp. 5; Comp. 30), despite attaching an assignment purportedly showing a transfer of the Mark from Christopher R. Grosso to Web Geek, LLC as of July 10, 2008 (Comp., Ex. B), indicating that Import Specialists had no rights in the Mark to license to Plaintiff on July 14, 2008; and,

- "[T]he trademark was licensed to Parts Geek by Import Specialists of America, Inc. on July 14, 2008 (Plaintiff's Opp. 5; Comp. 30), despite claiming that "Web Geek later licensed the trademark to Parts Geek" (Opp. 14 n.3).

The sum of these contradictory statements negates Plaintiff's claim that it has a valid right in the Mark. The fact that Plaintiff alleges that it has expended capital in promoting the Mark and is being damaged by the alleged uses of the Mark do not clarify these contradictory allegations to allow Plaintiff to establish rights in the Mark – indeed, they only further contradict Plaintiff's clear assertion that Web Geek owns the mark. Opp. 5; Comp. 30.

Thus, the claim that Plaintiff owns or has any valid license – exclusive or otherwise – in the mark has not been adequately pleaded and should not be considered for the purposes of determining if Plaintiff has stated a claim. *See Warburton v. Foxtons, Inc.*, 2005 U.S. Dist. LEXIS 39615, *10 (D.N.J. June 13, 2005) (court need not accept as true allegations contradicted

---

*Collegiate Athletic Ass'n*, 288 F.3d 548, 559-60 (3d Cir. 2002) (A court "has discretion to address matters outside the complaint when ruling on a motion to dismiss"); *Ernst v. Rising*, 427 F. 3d 351, 372 (6th Cir. 2005) (where jurisdiction is challenged, a court may consider documents outside the pleadings). Moreover, the authenticity of a print-out from the USPTO's public records cannot reasonably be challenged and is proper matter for judicial notice. *See Island Software & Computer Serv. v. Microsoft Corp.*, 413 F.3d 257, 262 n.2 (2d Cir. 2005) (noting and affirming district court's acceptance of non-authenticated trademark records).

by appended documents); *Payne v. DeLuca*, 433 F. Supp. 2d 547, 612 (W.D. Pa. 2006) (court need not accept as true contradictory allegations not pleaded in the alternative).

*Mostowfi v. 12 Telecom Int'l, Inc.*, 269 Fed. Appx. 621, 623 (9th Cir. 2008)(unpublished) is instructive on this issue. There, a plaintiff brought suit for the infringement of copyrighted software; however, an agreement that appears to have been attached to the Complaint acknowledged that a non-party had ownership of the copyright. *Id.* In affirming the District Court's dismissal, the Ninth Circuit Court of Appeals noted that a court need not accept as true allegations "that are contradicted by matters properly subject to judicial notice or by exhibit." *Id.* (citation omitted). As the attached materials contradicted plaintiff's claim of ownership, plaintiff's pleading of standing was disregarded and the claim was dismissed.

Plaintiff essentially asks this Court to ignore the contradictory statements and evidence it has submitted to allow this case to proceed. As in *Mostowfi*, however, this Court should disregard Plaintiff's claim of ownership or an interest in the Mark as being not well pleaded. Without properly pleaded allegations showing that Plaintiff has standing, the trademark-related claims should be dismissed.

## 2.   Alternatively, Plaintiff's Infringement, Dilution and State Claims Fail

USAP submits that all of Plaintiff's trademark-related claims must fail due to its contradictory and improper pleading. However, even if all of the contradictory claims in the Complaint are taken as true, Plaintiff *still* has not plead that it is the actual owner or exclusive licensee of the Mark. Thus, at a minimum, Plaintiff's trademark infringement (Count One), federal trademark dilution (Count Five), common law trademark infringement (Count Six) and New Jersey unfair trade practices (Count Seven) claims should be dismissed, as they all require Plaintiff to own or be the exclusive licensee of the Mark. *See Supra, Quabaug, Shell, Commerce.*

i.   **Federal Trademark Infringement**

To assert a federal trademark infringement claim, a plaintiff must be the owner or the exclusive licensee of the mark at issue. *See Quabaug*, 567 F.2d at 160; *Shell*, 596 F. Supp. 2d at 202. To be an exclusive licensee, a party must be granted truly exclusive rights in the mark, to the exclusion of the licensor, such that it can be considered the assignee of the mark. *See Quabaug*, 567 F.2d at 159, n.8. Thus, even where there is only one licensed user of a mark, the license is not "exclusive" unless all of the owner's rights are transferred. *Experian Mktg. Solutions, Inc. v. U.S. Data Corp.*, 2009 U.S. Dist. LEXIS 82075, *12 (D. Neb. Sept. 9, 2009) (trademark license non-exclusive, even where it was the only one issued, where no allegation that licensee possessed all rights, exclusive from others).

In an attempt to satisfy this standard, Plaintiff has pointed to various allegations relating to the money it spent promoting and operating under the Mark, claiming that this makes it the "functional owner" of the Mark. Opp. 15. However, none of the allegations pointed to by Plaintiff in support of these contentions relate to exclusivity. Moreover, even if Plaintiff had pleaded such exclusivity, Plaintiff itself asserts that Web Geek is the current owner of the Mark, and further claims that during the relevant timeframe, another party, either Import Specialists or Christopher R. Grosso, assigned the Mark to Web Geek. Opp. 5; Comp. 30, Ex. B. These pleaded facts are inconsistent with the type of exclusivity required to give Plaintiff standing, and negate any argument that Plaintiff is the owner or exclusive licensee of the Mark. *See Cent. Mfg. Co. v. Pure Fishing, Inc.*, 392 F. Supp. 2d 1046, 1047 (N.D. Ill. 2005) (exclusive licensee lacks standing where licensor retains ownership control over mark). Thus, Plaintiff lacks standing to bring a federal trademark infringement claim.

Notably, the only case cited by Plaintiff in support of its contention that extensive use creates "functional ownership" rights is inapposite. In *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*,

753 F. Supp. 1240, 1245 (D.N.J. 1991) *aff'd without op.,* 935 F.2d 1281 (3rd Cir. 1991), after a

bench trial, the plaintiff was deemed to have standing to bring trademark infringement claims

even though it did not own the trademark; however, ***the plaintiff was the holder of a valid***

***written exclusive license. Id.*** at 1242, 1245. Here, Plaintiff has not pleaded such exclusivity, and

the allegations and documents attached to the Complaint indicate otherwise.

As Plaintiff has not pleaded ownership or an exclusive license in the Mark, the federal

trademark infringement claim (Count One) must be dismissed for lack of standing.

### ii.  Federal Trademark Dilution

The standard to assert a dilution claim is even stricter than the standard for trademark

infringement, as even exclusive licensees do not have standing. *Icee Distributors, Inc. v. J&J*

*Snack Foods Corp.*, 325 F.3d 586, 599 (5th Cir. 2003) ("Because plaintiff is not the owner of the

marks, but merely an exclusive licensee, it has no standing" to bring a dilution claim); *Shell*, 596

F. Supp. 2d at 202 (same).

Plaintiff offers no new facts, arguments or allegations relating to why its trademark

dilution claim should not be dismissed – it merely reiterates its argument that because it has

invested money in the Mark and that it is allegedly incurring damage, it is the true party in

interest. Opp. 19. This is simply not the law. The investment of funds in the Mark does not

change the fact that – as Plaintiff has admitted – Web Geek owns the Mark. Opp. 5. As Plaintiff

is not the owner of the mark, its dilution claim (Count Five) must be dismissed.

### iii.  State Trademark Claims

Plaintiff's final trademark-related claims are common law trademark infringement and

New Jersey unfair trade practices. Both of these claims are predicated on the allegations that

USAP has misused the Mark. Opp. 9. Plaintiff admits that the standards for these claims are the

same as the Lanham Act standards (*Id.* at 20), and indeed, they are. *See Commerce*, 285 F. Supp.

2d at 483. Further, Plaintiff and USAP agree that such claims "hinge upon a showing of ownership." Opp. 21.

As discussed, Plaintiff admits it does not own the Mark. In an attempt to rebut the plain impact of its own admission, Plaintiff argues that consumers and competitors that are damaged by unfair competition have standing to initiate suit. Opp. 21-22. However, the law cited by Plaintiff relates to general standing to bring this type of claim. *Id.* The fact that only consumers and commercial competitors may have general standing to bring an unfair competition claim under New Jersey law does not alter the fact that ownership of an asserted trademark is a specific standing requirement when the underlying unfair competition claim relates to trademark infringement. *See Commerce*, 285 F. Supp. 2d at 483 (state unfair competition claim premised on trademark infringement requires ownership of the asserted mark).

As Plaintiff does not own the Mark, its common law trademark infringement (Count Six) and New Jersey unfair trade practices (Count Seven) claims must be dismissed.

### C. Plaintiff's RICO Claim Continues to Fail to Allege Necessary Elements

Without materially disputing the analysis or the standards of law in USAP's motion papers, Plaintiff restates the facts alleged in its Complaint and asserts that it satisfies the RICO pleading standards. Despite this repeated bald assertion, Plaintiff's RICO claims indeed fail.

Plaintiff claims that the standards for federal and New Jersey State RICO claims are different; however, the relevant definitions for the current analysis – "racketeering activity" and "enterprise" – are the same. Under both laws, a single entity and its employees cannot be considered an "enterprise." *See Goody Products, Inc. v. Dun & Bradstreet, Inc.*, 241 N.J. Super. 297, 298 (Law Div. 1990) (dismissing NJ RICO claim brought against defendant and a number of its employees for failure to allege a separate "person" and "enterprise."); *Emcore Corp. v. PricewaterhouseCoopers LLP*, 102 F. Supp. 2d 237, 256 (D.N.J. 2000) (same under federal

RICO). Furthermore, "racketeering activity" is defined by both the state and federal statutes by lists of specific criminal predicate acts. *See* N.J. Stat. § 2C:41-1; 18 U.S.C. § 1961(1). Thus, for the purposes of this motion, the federal and state acts are indeed "practically identical." *See Tedeschi v. Smith*, 2010 U.S. Dist. LEXIS 2336, *14 (D.N.J. Jan. 12, 2010); *State v. Ball*, 141 N.J. 142, 156 (1995) (federal RICO history and caselaw may be used to analyze New Jersey RICO statute). Plaintiff's pleadings fail to satisfy these standards.

Plaintiff claims that the "enterprise" is "USAP along with an individual by the name of Jenny McLane and the companies or entities known as 'partstrain,' and 'autopartswarehouse.'" Opp. 23. This allegation fails to state the existence of a separate "person" and "enterprise," as the Complaint alleges that Jenny McLane is an employee of USAP (Comp. 42 & Ex. D) and that "partstrain" and "autopartswarehouse" are owned and operated by USAP (Comp. 38). Thus, the Complaint merely alleges that a single entity – USAP – is both the "person" and "enterprise," and as such, the Complaint fails to state a federal or state RICO claim.

Further, Plaintiff has failed to allege any "racketeering activities" sufficient to satisfy the statutes. Plaintiff claims that it has pleaded numerous predicate acts which satisfy the standard of "racketeering activities," and lists a number of such bases. Opp. 23. The fact remains, however, that only two of the "criminal acts" alleged in the Complaint and reiterated in the Opposition – mail fraud and wire fraud – are actually enumerated "racketeering activities." N.J. Stat. § 2C:41-1; 18 U.S.C. § 1961(1).

Plaintiff alleges that USAP has committed mail and wire fraud by making sales through the infringement of Plaintiff's Mark, and subsequently transporting goods through the mails relating to such sales. Comp. 151. However, this precise theory – a RICO claim predicated on mail fraud and wire fraud committed in the course of trademark infringement – was rejected by the Court in *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 631 (S.D.N.Y. 2006).

In *Evercrete*, the plaintiff claimed that defendants' marketing misused plaintiff's trademark to make sales that rightfully belonged to plaintiff, and that the shipment of product related to those sales constituted the fraudulent use of the mails and wires. *Id.* at 630. In rejecting this formulation, the Court found that plaintiff was merely asserting trademark infringement, not racketeering. The Court stated that:

> [a]t its core, this a commercial dispute over [trademark] rights...
> All businesses use interstate mail or wires. Congress did not intend
> that every trademark dispute would be brought under RICO ...
> Plaintiffs may not reformulate garden variety trademark
> infringement claims into mail or wire fraud in order to state a
> violation of RICO. Id. at 631.

This is exactly what Plaintiff seeks in this case – to reformulate its ordinary trademark infringement allegations into RICO claims. This construction is not the proper statement of the law and should be rejected. Further, even if trademark infringement could support mail or wire fraud allegations, Plaintiff has still failed to allege such claims with particularity, despite being notified of this failing by USAP. *See Lum v. Bank of Am.*, 361 F.3d 217, 223 (3rd Cir. 2004) (mail and wire fraud allegations must be pleaded with specificity under FRCP 9(b)).

In addition, aside from having no clear definitions, Plaintiff's other alleged criminal predicates – "computer fraud, internet fraud, illegal theft of electronic data and trademark infringement" (Opp. 23) – are simply not enumerated racketeering activities. N.J. Stat. § 2C:41-1; 18 U.S.C. § 1961(1). If these allegations relate to some other violation of Plaintiff's rights, Plaintiff's failure to enumerate the basis of such rights fails to put USAP on notice of the claims brought against it.

As Plaintiff has not alleged an "enterprise" or the commission of any "racketeering activity," Plaintiff's federal and state RICO claims (Count Nine) should be dismissed.

**D.    Plaintiff's Construction of a CFAA Claim Contradicts the Act**

Plaintiff acknowledges that a claim for a CFAA violation is only available to those that have suffered "damage or loss" by reason of a violation of the Act, and if the conduct that caused such "damage or loss" involves a specific type of conduct stipulated in the Act. Opp. 25; 18 U.S.C. § 1030(g). However, Plaintiff fails to satisfy either of these requirements.

As USAP noted in its motion, "damage" is defined as an impairment of computer data, and "loss" is defined as losses caused by an interruption in computer service. 18 U.S.C. § 1030(e)(8), (11). Despite the types of recovery that may be available for violations of 1030(g), no violation even occurs unless a plaintiff has suffered "damage or loss." *Id*. at 1030(g).

Plaintiff acknowledges the definitions of "damage" and "loss," but fails to satisfy their pleading requirements. Plaintiff points to three allegations that it claims satisfies these standards: (1) that USAP allegedly "crawled" Plaintiff's website and converted its pricing data; (2) that USAP "circumvented" technological protective elements of Plaintiff's website; and, (3) that USAP "obtain[ed]" and "converted" Plaintiff's data. Opp. 26.

None of these allegations relate in any way to the impairment of integrity or availability of data (as opposed to its mere acquisition) or an interruption in service of the website. Instead, these allegations assert that USAP allegedly misappropriated or "convert[ed]" Plaintiff's data to USAP's own commercial benefit. Such an allegation does not satisfy the "damage" or "loss" requirements of the CFAA. *See Chas. S. Winner, Inc. v. Polistina*, 2007 U.S. Dist. LEXIS 40741, *10-11 (D.N.J. 2007) (unpublished) ("the meaning of loss under the statute must pertain to 'a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted'").

*Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468 (2d Cir. 2006) is instructive. In that case, the plaintiff brought suit claiming ex-employees downloaded and shared proprietary

information with a defendant. *Id.* at 469-70. Defendants challenged plaintiff's ability to show "loss" under the statute, and in response the plaintiff alleged, *inter alia*, that it had lost revenue as a result of the misuse of the misappropriated information. *Id.* at 477. In rejecting plaintiff's construction, the Court concluded that the pleaded lost revenues were not related to any interruption in computer service, and lost revenue are generally too far removed from computer damage to constitute "loss" under the CFAA. *Id.* at 477-78. Thus, the CFAA claim was dismissed because "plaintiffs are not claiming to have lost money because [their] computers … were inoperable, but rather because of the way the information [collected from said computers] was later used by defendants." *Id.* at 477.

The current case is nearly identical, as all of Plaintiff's assertions related to the "damage or loss" it suffered as a consequence of the alleged misuse of proprietary information. Thus, Plaintiff's pleadings fail to satisfy the CFAA's "damage or loss" standards.

Plaintiff's claim that the CFAA is commonly used to pursue employees for the misappropriation of a business' confidential information ignores that fact that the recoverable wrong in those circumstances is the damage caused by a company's investigation and remedying of the unauthorized access – not the mere use of the obtained information that did not involve the integrity of the data or any interruption to computer service. *Lockheed Martin Corp. v. Speed*, 2006 U.S. Dist. LEXIS 53108, *8 (M.D. Fla. Aug. 1, 2006) ("the alleged wrongful taking of trade secrets does not, by itself, fit within the grouping of "damage" or 'loss'" under the CFAA).

Moreover, Plaintiff's allegations further fail to allege a sufficient amount of damage or loss to satisfy the CFAA's jurisdictional requirement. Plaintiff's CFAA claim is predicated on the basis that USAP's actions have caused "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value." Opp. 25. Plaintiff claims to have satisfied this $5,000 pleading threshold by its generic jurisdictional allegation that the amount in controversy in this

case exceeds $75,000. Opp. 25. Plaintiff cites to *Lockheed Martin Corp. v. Speed* in support of its argument that it need not particularize which part of the $75,000 satisfies the CFAA's loss standard. Opp. 25.

This argument, however, misreads *Lockheed* and ignores the fact that a plaintiff must suffer a ***particular type*** of "damage" or "loss" in order to bring a claim under the CFAA. In *Lockheed*, the plaintiff alleged that it had suffered damages in excess of $5,000 based on defendant's acts which violated the CFAA. *Lockheed*, 2006 U.S. Dist. LEXIS at *10. The court held that, although plaintiff did not state that *only* CFAA-recognized "damage" and "loss" amounted to $5,000, the liberal pleading standard allowed the Complaint to stand. *Id.* The Court's leniency in this pleading standard, however, was based on the fact that the plaintiff pleaded that it had suffered recoverable "damage" or "loss" under the CFAA and that such damages were related to "each of the alleged violations of the CFAA." *Id.* In the present case, Plaintiff does no such thing. Plaintiff fails to make any allegation that it suffered the type of "damage" or "loss" required to provide jurisdiction under the CFAA, nor that any particular amount of such damages or loss occurred based on USAP's alleged CFAA violations. As such, Plaintiff's claim that is has suffered generic jurisdictional damages in excess of $75,000 that are not specifically related to any CFAA claim does not satisfy the CFAA's pleading requirements.

Despite pointing out the errors in its argument and allegations, Plaintiff has neither explained why its allegations support a proper CFAA claim to avoid dismissal pursuant to FRCP 12(b)(6), nor come forward with evidence that it has suffered recognized loss sufficient to avoid dismissal pursuant to FRCP 12(b)(1). As such, Plaintiff's CFAA claim should be dismissed.

### E.   Conclusion

Plaintiff's Opposition fails to explain how the Complaint properly pleads causes of action that can be sustained. Each of Plaintiff's claims against USAP are deficient in their pleadings,

and allowing Plaintiff to amend its pleadings would be an exercise in futility. Thus, USAP respectfully requests that the entire Complaint against it be dismissed pursuant to FRCP 12(b)(1) & (6).

**III.  ARGUMENT ON MOTION TO TRANSFER**

For the reasons outlined in its motion, if the Court declines to dismiss any of the claims alleged against USAP and transfers the case brought against Google to the Northern District of California, USAP respectfully requests that the entire action, including any remaining viable claims against USAP, be so transferred.

**IV.  CONCLUSION**

For the foregoing reasons, USAP respectfully requests that this Court grant its Motion, and for such other, further, and different relief as this Court deems just and proper.

Respectfully submitted,

**Attorneys for Defendant U.S. Auto Parts
Network, Inc.**

Kurt W. Krauss, Esq. (KK0459)
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
33 Washington Street
Newark, New Jersey 07102
Tel: (973) 624-0800
Fax: (973) 624-0808
Kurt.Krauss@wilsonelser.com

Adam R. Bialek, Esq. (AB6268)
Scott M. Smedresman, Esq. (SS2644)
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
3 Gannett Drive
White Plains, New York 10604
Tel: (973) 624-0800
Fax: (973) 624-0808
Adam.Bialek@wilsonelser.com
Scott.Smedresman@wilsonelser.com

William J. O'Shaughnessy, Esq. (WO5256)
Scott S. Christie, Esq. (SC8280)
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Tel: (973) 622-4444
Fax: (973) 624-7070
woshaughnessy@mccarter.com
schristie@mccarter.com

Dated: February 22, 2010